The STANDARD OIL COMPANY,
Plaintiff,

v.

ROHM AND HAAS COMPANY, et
al., Defendants.

Civ. A. No. H–82–3474.

United States District Court,
S.D. Texas,
Houston Division.

May 25, 1984.

William L. LaFuze, Vinson & Elkins, Houston, Tex., for plaintiff.

David E. Arnold, Winters, Deaton & Briggs, Houston, Tex., for defendants.

## ORDER

McDONALD, District Judge.

Came on to be heard the Motion for Summary Judgment of Dismissal Based on Laches and 35 U.S.C. § 286 of Defendant Nippon Shokubai Kagaku Kogko Co., Ltd. ("Nippon"). Having considered the arguments of the parties and the applicable law, the Court is of the opinion that the Motion should be GRANTED and this Defendant should be DISMISSED from the instant action.

The appropriateness of summary judgment as to this Defendant is not in question. The Court therefore will proceed to the merits of the Motion.[1]

1. Nippon also argues in its Motion that this Court lacks jurisdiction over Nippon's person.

### I. Laches

In patent litigation, a party may invoke the defense of laches "where the plaintiff has unreasonably and inexcusably delayed in prosecuting its rights and where that delay has resulted in material prejudice to the defendant." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1325 (5th Cir.1980). Laches bars plaintiff's recovering damages for infringement which occurred prior to the filing of the suit. *A.C. Auckerman v. Miller Formless Co., Inc.*, 693 F.2d 697, 699 (5th Cir.1982). The Fifth Circuit has enunciated a two-part test for determining whether laches exist in a case. First, the delay in filing suit must have been unreasonable or inexcusable; second, the defendant must have suffered injury or prejudice as a result of the delay. *Eastman Kodak*, 616 F.2d at 1326. Courts generally use the six-year statute of limitations, see *infra*, as a bench-mark for laches, *Auckerman*, 693 F.2d at 699; *Eastman Kodak*, 616 F.2d at 1326. However, laches may also bar a suit brought within six years of the allegedly infringing action if the plaintiff makes sufficient showings of unreasonability of delay and prejudice. *See, e.g., Whitman v. Walt Disney Prod., Inc.*, 263 F.2d 229, 232 (9th Cir.1958). The primary effect of a delay longer than six years is to accord a presumption that the delay was unreasonable, and plaintiff bears the burden of justifying the delay. *Eastman Kodak*, 616 F.2d at 1326; *TMW Mfg. Co. v. Dura Corp.*, 592 F.2d 346, 349 (6th Cir.1979). Plaintiff could defeat the barring of damage awards by showing that (a) no prejudice resulted; (b) a good excuse for delay existed; or (c) that defendant had engaged in egregious conduct that changed the equities of the situation. *Watkins v. Northwestern Ohio Tractor Pullers Ass'n, Inc.*, 630 F.2d 1155, 1159 (6th Cir.1980).

Whether laches exists is a question committed to the sound discretion of the court, *Gardner v. Panama Ry. Co.*, 342 U.S. 29, 30, 72 S.Ct. 12, 13, 96 L.Ed. 31

The Court need not reach and therefore will not address this argument.

(1951); *Watkins*, 630 F.2d at 1163; *Potash Co. v. International Minerals & Chem. Corp.*, 213 F.2d 153, 155 (10th Cir.1954), and depends on the facts of each case, *Menendez v. Holt*, 128 U.S. 514, 9 S.Ct. 143, 32 L.Ed. 526 (1888); *Environmental Defense Fund, Inc. v. Alexander*, 614 F.2d 474, 475 (5th Cir.), *cert. denied*, 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980).

The initial question in determining whether laches bar recovery of damages must be whether the delay in filing suit was unreasonable. In order to decide that question, a predicate query must be made: from what date should the period of delay be measured? The Fifth Circuit has explained that:

> To determine the length of plaintiff's delay, the court must look not to the date on which the patent was issued but rather to the time at which the plaintiff knew or, in the exercise of reasonable diligence, should have known of the defendant's alleged infringing action. *See TWM Manufacturing Co., Inc. v. Dura Corp.*, 592 F.2d at 349 (period of delay begins to run from the notice of infringement given to defendant); *Maloney-Crawford Tank Corp. v. Rocky Mountain Natural Gas Co., Inc.*, 494 F.2d [401] at 403 (where known infringement began before plaintiff obtained title to patent, delay is measured from the time the title was obtained); *Moore v. Schultz*, 491 F.2d 294, 300–01 (10th Cir. 1974) (period begins when plaintiff became aware of the possible infringement) . . . .

*Eastman Kodak*, 616 F.2d at 1326.

The question of from when the period of delay should be measured is much-disputed by the parties. Defendant argues that Plaintiff waited longer than six years to file its lawsuit. Specifically, Nippon contends that its last alleged act of infringement occurred in November, 1975, when it shipped catalyst to Rohm and Haas. At worst, Nippon reasons, Plaintiffs had notice of the infringement by Nippon in May, 1975, when Plaintiff filed a complaint regarding Rohm and Haas' use of the catalyst in tests performed in Philadelphia before the International Trade Commission (ITC). Plaintiff claims that the period to be considered in determining whether laches should bar this suit should run from November, 1976, when Rohm and Haas' Houston plant began manufacturing with the type of catalyst Nippon had supplied. Plaintiff reasons in this regard that the cause of action against Nippon is for contributory infringement, *i.e.*, contributing to Rohm and Haas' infringement in Houston, not Philadelphia. The crux of Plaintiff's argument appears on page 21 of its Brief in Opposition to the Motion at bar. Plaintiff asserts that:

> Sohio could not have known of any infringing activity in Houston in 1974 for that activity did not begin until November of 1976. Since the length of Sohio's delay here is, at most, measured from the time "of the defendant's allegedly infringing action"—in this case the operation of Rohm and Haas' Houston acrylic acid plant which commenced on November 18, 1976—Sohio's delay in filing this suit did *not* exceed six years.

Presumably, Plaintiff would advance the same argument here that it does in discussing the question of whether the statute of limitations has run: that no cause of action for contributory infringement occurs until the actual infringement occurs. In support of this proposition, Plaintiff cites several cases, *inter alia*, *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 92 S.Ct. 1700, 32 L.Ed.2d 273 (1972); *Fromberg, Inc. v. Thornhill*, 315 F.2d 407 (5th Cir. 1963); and *Rohm and Haas Co. v. Dawson Chem. Co.*, 557 F.Supp. 739 (S.D.Tex.1983). However, these cases hold that a cause of action may not be brought for contributory infringement before direct infringement has occurred; none of these cases holds that the statute of limitations for contributory infringement begins to run when the actual and not the contributory infringement take place.

After careful consideration, the Court has determined that the relevant period for deciding if laches exist in a contrib-

utory infringement action begins when the Plaintiff knew or, in the exercise of reasonable diligence, should have known of the defendant's alleged contributorily infringing action. *Eastman Kodak*, 616 F.2d at 1326. In this case, that action occurred when Nippon shipped the catalyst to the United States.

There are two reasons for this conclusion. First, the language of *Eastman Kodak* cited immediately above indicates that this is the correct focus. *Eastman Kodak*, for example, is couched in terms of "the defendant" who asserts that unreasonable delay has occurred. This emphasis is proper, given that laches is based upon the circumstances in which a particular defendant finds itself, and therefore should be measured in terms of the defendant who advances the argument. If the period were measured from the date of the direct infringement, the circumstances to which the Court would look to determine whether delay was unreasonable and prejudicial would have occurred only between the direct infringement and the filing the lawsuit. However, the events that prejudice the defendant could have taken place after the alleged contributory infringement but before the direct infringement. Moreover, *Eastman Kodak* focuses on the "knowledge" of the activities of the defendant. In the case at bar, Plaintiff clearly knew that Nippon was shipping allegedly infringing catalyst to the United States and, in fact, undertook action in the ITC (which Plaintiff aborted) to stop that shipping. That direct infringement had not yet occurred is not the issue. *See Watkins*, 630 F.2d at 1161 (plaintiff held to have knowledge for purposes of laches on the date it sent the letter protesting intended infringing use). Second, the nature of the cause of action for contributory infringement supports the Court's conclusion that laches should be measured from the contributory infringement and not the infringement which was contributed to. The doctrine of contributory infringement was designed "to protect patent rights from subversion by those who, without directly infringing the patent themselves, engage in acts designed to fa-

cilitate infringement by others." *Dawson Chem. Co. v. Rohm and Haas Co.*, 448 U.S. 176, 188, 100 S.Ct. 2601, 2609, 65 L.Ed.2d 696 (1980). The elements of the cause of action for contributory infringement emphasize that the operative act in such a case is the selling of a thing that is not capable of substantial noninfringing use. 35 U.S.C. § 271(c); *see also Arco Mfg. Co. v. Convertible Top Replacement Co., Inc.*, 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). The contribution to the infringement is thus the cause of action's focus. Therefore, the period for determining laches begins at latest in May, 1975, when Rohm and Haas complained of Nippon's actions to the ITC. Seven and one-half years have elapsed since the filing, and that delay can be presumed unreasonable under *Eastman Kodak, supra.*

▆▆▆▆ Plaintiff has attempted to justify the delay in filing. Plaintiff argues in this regard that its institution of actions abroad and before the ITC put Nippon on notice that litigation over Nippon's actions was a real possibility. However, the rule in the Fifth Circuit is that "[w]here the plaintiff is engaged in other litigation involving the patent, to escape a defense of laches he must at least inform the potential infringer of his intent to pursue his rights under the patent." *Eastman Kodak*, 616 F.2d at 1328. Thus, whether other lawsuits were prosecuted is not the question. Rather, the Court must inquire whether the Plaintiff gave the Defendant notice of its intention to file the lawsuit in which the question of laches is raised. *See, e.g., American Home Prod. Corp. v. Lockwood Mfg. Co.*, 483 F.2d 1120, 1124 (6th Cir.1973); *Siemens Aktiengesellschaft v. Beltone Elec. Corp.*, 381 F.Supp. 57, 63 (N.D.Ill.1974). Nothing in the record so suggests. *Compare Eastman Kodak*, 616 F.2d at 1329 (letter notice to defendant evinces actual notice of litigation later filed). In fact, Nippon argues, not unreasonably, that Plaintiff's withdrawal of its action before the ITC on the eve of the commencement of proceedings and pursuit of foreign lawsuits indicated that Plaintiff would not pur-

sue patent lawsuits against the Japanese company in the United States. Likewise, the preservation of evidence sought by Nippon in the United States District Court for the Eastern District of Pennsylvania did not provide notice to Defendant that lawsuits would be pursued on patent claims in the United States. Prudence by a party in preserving evidence against possible litigation does not constitute notice of action being taken by an opponent. Similarly, Nippon's receipt of a letter from Plaintiff in 1976 that threatened generally to litigate with Nippon to which Plaintiff adverts and Nippon referred to in Exhibit "D" to Plaintiff's brief does not constitute notice. The letter is not a part of the record. Moreover, Nippon's description of the letter leads the Court to conclude that the letter contained no more than general allegations that litigation might be forthcoming. *See also Continental Coatings Corp. v. Metco,* 464 F.2d 1375, 1378 (7th Cir.1972) (threats of vigorous enforcement of a patent followed by no effort to negotiate seriously or to file a lawsuit does not afford notice to a party); *Watkins,* 630 F.2d at 1163 ("the patentee must give the infringer, within six years of learning about the infringement, notice of other pending litigation which delays enforcement of the patent against the alleged infringer and of *an intent to sue when other litigation is concluded"*) (emphasis added).

■ Even assuming Plaintiff filed suit within the six-year period and Defendants bear the burden of proving that delay was unreasonable in this case, the Court considers that the Defendants have met that burden. Admittedly, what constitutes "unreasonableness" in the context of laches has not been clearly established in patent litigation. However, Plaintiff has offered no explanation for its delay other than negotiations which it asserts were ongoing between Plaintiff and Rohm and Haas regarding the alleged actual infringement of the latter party. That these negotiations were pursued seriously has been called into question; in addition, Plaintiff gives no indication that Nippon knew of these negotiations. Given the lack of notice to Nippon

regarding the negotiations and the lack of notice regarding Plaintiff's intention to pursue patent claims in the United States, the Court has determined that Defendant has carried its burden to show that Plaintiff unreasonably delayed filing suit.

■ Having found that delay was unreasonable, the Court proceeds to the second step of the *Eastman Kodak* test, *i.e.,* whether that delay prejudiced Defendant. The record reflects the death of one key witness for Nippon, Shigeru Sakuyama, and the departure from Nippon's employ of another key witness, Isao Yanagisawa. The roles of these two men, Executive Managing Director in charge of Research and Development and purported co-inventor of Nippon's catalyst, respectively, would make them important resources for defending the instant lawsuit. The loss of these witnesses is the type of prejudice against which the doctrine of laches was intended to guard. *See, e.g., Auckerman,* 693 F.2d at 701 (dimming of memories and loss of documents prejudices defendant against whom filing was delayed). Thus, Nippon appears clearly to have been prejudiced by Plaintiff's delay in filing suit.

## II. Statute of Limitations

The statute of limitations in patent suits is found at 35 U.S.C. § 286. That section provides in pertinent part that: "[n]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action."

■ The arguments on this issue of whether the six-year statute of limitations mirror those traced above, *viz.,* whether the statute runs from Nippon's 1975 shipping to Rohm and Haas or the 1976 manufacture by Rohm and Haas using Nippon's catalyst. Defendant rests its argument on the *Deepsouth/Fromberg* line of cases, and the Court has earlier dealt with those arguments. Therefore, the statute of limitations began to run when Defendant Nippon shipped its last allegedly infringing

catalyst in 1975, and § 286 bars the recovery of damages against this Defendant.

Accordingly, it is ORDERED, ADJUDGED, and DECREED that the Motion be and hereby is GRANTED, and the Complaint shall be DISMISSED as to this Defendant.