**MGA, INC., Plaintiff,**

v.

**CENTRI–SPRAY CORPORATION, Defendant.**

**Civ. A. No. 83–2641.**

United States District Court, E.D. Michigan, S.D.

July 17, 1986.

John R. Benefiel, Birmingham, Mich., for plaintiff.

Joseph W. Farley, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, Chief Judge.

This is a patent infringement action in which MGA, Inc. ("MGA") alleges that Centri-Spray Corporation ("Centri-Spray") has infringed and continues to infringe on United States Patents Nos. 3,000,992 ('992)

and 3,547,254 ('254) and 3,570,656 ('656). The defendant has raised the affirmative defenses of laches and estoppel, which were bifurcated from the balance of the case for final disposition in advance of reaching the merits of the action. Limited discovery has been completed, and the defendant now moves for summary judgment based upon its affirmative defenses.[1]

The patent involved in this suit, '656, covers certain machinery used in the mass production of automobiles. The application for the '656 patent was filed in 1966 by employees of the Simplex Corporation. On November 3, 1969, Simplex, through its attorneys, sent the defendant a letter saying it believed the defendant was selling equipment which appeared to incorporate many features of its product which were covered by a patent then pending before the United States Patent Office. Simplex went on to say that if and when the patent was issued, it would vigorously enforce its rights. The '656 patent was issued to Simplex on March 16, 1971. Simplex assigned the patent to one John Gagne on August 21, 1975, who in turn assigned it to the plaintiff on February 24, 1978. This action was filed on July 5, 1983. There are basically two products which the plaintiff claims infringes on its '656 patent. The allegedly infringing machinery built and sold by the defendant prior to 1979 is known as the "Rudlaff" design, and in the summer of 1979 the defendant is alleged to have changed the nature of its infringing activity by use of what has been labelled the "Plumridge" design.

■ The only statute of limitations applicable to patent infringement cases is set forth in 35 U.S.C. § 286, which provides only that the patentee cannot recover damages for any infringement committed more than six years before the filing of the complaint. In the absence of statutory command, courts have applied the equitable doctrines of laches and estoppel to limit the patentee's right to maintain an action.

See, Anno., Laches as Defense in Patent Infringement Suit, 35 ALR Fed. 551. A finding of laches or estoppel is a matter within the trial court's discretion and its decision will not be set aside on appeal absent an abuse of discretion. *Studiengesellschaft Kohle v. Eastman Kodak Co.,* 616 F.2d 1315 (5th Cir.1980), *cert. denied,* 449 U.S. 1014, 101 S.Ct. 573, 66 L.Ed.2d 473 (1980). Courts have expressed some reluctance to resolve patent disputes on motions for summary judgment, and it would be an abuse of discretion for the court to make any findings of disputed material facts. *A.C. Aukerman Co. v. Miller Formless Co., Inc.,* 693 F.2d 697, 702 (7th Cir.1982). The burden is upon the moving party to show conclusively that there are no genuine issues of material fact, and the evidence, together with all of the inferences drawn therefrom, must be considered in the light most favorable to the party opposing the motion. *Watkins v. Northwestern Ohio Tractor Pullers,* 630 F.2d 1155 (6th Cir.1980).

■ Laches and estoppel are distinct concepts in patent law. The effect of laches is to withold damages prior to the filing of the suit, while estoppel forecloses the patentee from gaining prospective relief and results in dismissal of the entire case. *Watkins v. Northwestern Ohio Tractor Pullers,* 630 F.2d 1155 (6th Cir.1980); *Advanced Hydraulics, Inc. v. Otis Elevator Company,* 525 F.2d 477 (7th Cir.1975), *cert. denied* 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975). A plaintiff's claim is barred by laches if he delays enforcing his rights for an unreasonable amount of time and the defendant has been materially prejudiced by the delay. *Watkins,* 630 F.2d at 1159. To establish estoppel, the defendant, in addition to showing laches, must show he was misled by the plaintiff. *Id.,* 630 F.2d at 1160.

■ In order to assert the defense of laches, the defendant must ordinarily prove (1) unreasonable and inexcusable delay by

---

1. The plaintiff does not contest the motion as to patent nos. '992 and '254, and is seeking to amend its complaint to drop those counts. The court will not address these claims, and will treat them as dismissed.

the plaintiff in bringing the enforcement action; and (2) that the defendant was materially prejudiced by this delay. *Leinoff v. Louis Milona & Sons, Inc.*, 726 F.2d 734 (Fed.Cir.1984). In this Circuit, as in others, if a patentee files suit more than six years after he knew or should have known of the alleged infringement, the delay is presumptively prejudicial and unreasonable, creating a rebuttable presumption of laches. *Watkins, supra; Leinoff, supra; A.C. Aukerman Co. v. Miller Formless Co., Inc.*, 693 F.2d 697 (7th Cir.1982). To overcome this presumption, the burden is on the plaintiff to (1) rebut the presumption of prejudice; (2) establish that there was a good excuse for the delay; or (3) show that the defendant engaged in "particularly egregious conduct which would change the equities significantly in plaintiff's favor." *TWM Mfg. Co., Inc. v. Dura Corp.*, 592 F.2d 346, 349 (6th Cir.1979).

▪ The six-year period begins to run when the patentee has actual or constructive knowledge of the alleged infringing activity of the defendant. *General Electric Co. v. Sciaky Bros., Inc.* 304 F.2d 724 (6th Cir.1962). It is clear that Simplex knew of the defendant's activities by at the latest November 3, 1969.[2] However, a patentee never has any rights under the patent until the patent issues. *Watkins*, 630 F.2d at 1161. Where a patentee has notice of potentially infringing activity before the issuance of the patent, the six-year period will not begin running before the issue date of the patent. *Id.* In this case, even though Simplex had knowledge of the defendant's activities in 1969, the "laches clock" did not start running until March 16, 1971, when the '656 patent was issued.

▪ As successors in interest to Simplex, Gagne and the plaintiff are charged with the consequences of Simplex's knowledge and dilatory conduct. *Continental*

*Coatings Corporation v. Metco, Inc.*, 464 F.2d 1375 (7th Cir.1972); *Dymo Industries, Inc. v. Monarch Marking Systems*, 474 F.Supp. 412 (D.Tex.1979).[3] The plaintiff did not bring this action until July, 1983, over twelve years after the laches period began to run. The presumption of laches having been established, the burden is now upon the plaintiff to show that there are disputed issues of material fact as to whether this delay was excusable, to rebut the presumption of prejudice, or that the defendant engaged in inequitable conduct.

▪ The plaintiff argues that Simplex's inactivity in 1975 should be excused because of Simplex's financial problems. This argument faces two hurdles, one legal, the other factual. Addressing the legal aspect first, the lack of funds is no excuse for delay in bringing suit. *Naxon Telesign Corp. v. Bunker Ramo Corp.*, 686 F.2d 1258 (7th Cir.1982); *In Re Yarn Processing Patent Validity Litigation*, 602 F.Supp. 159 (D.N.C.1984); *See, generally, Anno*, 35 ALR Fed. at 590. Looking to the circumstances of this case, the '656 patent was assigned to Gagne on August 21, 1975, and Simplex did not go into involuntary bankruptcy proceedings until November 5, 1975. Thus Simplex's financial condition after August 21, 1975 is irrelevant to a determination of laches, and the plaintiff has not supplied the court with any concrete evidence of Simplex's financial condition prior to that date.

▪ Simplex assigned the '656 patent over to John Gagne on August 21, 1975 and Simplex entered into bankruptcy proceedings a few months later in November.[4] The plaintiff claims that because the bankruptcy trustee could have set aside the assignment of the '656 patent, Gagne's title was in doubt until 1977, when the trustee affirmatively indicated that he would not

---

**2.** Stipulation of Fact 12 in the Pretrial Order states that Simplex was aware of the defendant's competing activities by November 3, 1969.

**3.** Stipulated Fact 17 in the Pretrial Order states that the plaintiff admits it is bound by the conduct of each of its predecessors in title.

**4.** John Gagne is the son of O.J. Gagne, who was the major stockholder in Simplex. He loaned his son the money to purchase the '656 patent.

set aside the transaction. As the court has already said, a patentee must have title to bring an enforcement action. Further, any delay caused by litigating the title to a patent is excusable. *See, Maloney-Crawford Tank Corp. v. Rocky Mt. N. Gas Co., Inc.,* 494 F.2d 401 (10th Cir.1974). However, the plaintiff has not submitted any evidence showing that Gagne's title to the '656 patent was actually contested.[5] The mere fact that the trustee had the power to set aside the assignment and may have even threatened to do so, does not establish that there was a legal dispute over title to the '656 patent.

On February 24, 1978, Gagne assigned the '656 patent over to the plaintiff.[6] The plaintiff claims that from April of 1978 until February, 1980, licensing negotiations were pending between the plaintiff and defendant, thus tolling the laches period. In order to have a tolling effect, licensing negotiations must ordinarily be continuous and bilaterally progessing, with a fair change of success, so as to justify significant delays. *Aukerman,* 693 F.2d at 700. On April 21, 1978, in a letter to the defendant, the plaintiff made the following offer concerning the '656 patent: "Accordingly, we would *invite* you to review these patents and this matter in general, and contact us if you would *wish* to *open* discussions in which the *possibility* of such a licensing arrangement *may* be further ex-

plored." [emphasis added] The defendant responded on September 6, 1978, declining the plaintiff's invitation to enter into licensing negotiations. The only other evidence submitted by the plaintiff is an affidavit by counsel stating that there were "one or more phone conversations" on this issue. The correspondence shows that at most, there was an invitation to enter into negotiations which was never accepted, and the plaintiff has not submitted evidence sufficient to create a dispute of material fact on this issue.[7]

On February 19, 1980, Ralph Tabor, a former stockholder of Simplex, filed a suit against Gagne and MGA, among others, charging that the 1975 assignment of the Simplex patents to Gagne was fraudulent. That litigation was resolved on June 25, 1983, shortly before the filing of the instant action. As this court has noted above, delay caused by litigation over the title to a patent is generally viewed as excusable. *Maloney-Crawford Tank Corp. v. Rocky Mt. N. Gas Co., Inc.,* 494 F.2d 401 (10th Cir.1974). Thus the period from February 19, 1980 until June of 1983, during which title to the patent was at issue, is excluded from the laches period.[8]

The court finds that there has been an unexcusable delay of approximately eight years and ten months between the

---

**5.** John Gagne states in his affidavit that he was advised by the trustee that the assignment would be set aside due to inadequate consideration. In another affidavit, Peter Manetta, the inventor behind the '656 patent, states that the trustee initially said the patents were in his possession. There are no documents indicating that Gagne was the owner of the '656 patent there was a formal attempt to do so. Further, Stipulated Fact 15 of the Pretrial Order states that Gagne was the owner of the '656 patent from August 21, 1975 to February 24, 1978.

**6.** Gagne and Peter Manetta, who was the inventor of most of the Simplex patents, formed the plaintiff, MGA Corporation, in November, 1977, hoping to promote the Simplex patents.

**7.** There was further correspondence between the parties from 1979 until 1980, none of which indicated any ongoing licensing negotiations.

At most, it reveals further attempts, albcit unsuccessful ones, by the plaintiff to convince the defendant to enter into such negotiations.

**8.** The defendant argues that the Tabor suit should not be considered by the court because the defendant did not receive notice of the suit. A delay caused by the patentee bringing suit against other infringers is excusable only where the patentee gives notice to the other alleged infringers of the suit, and of its intent to pursue litigation against them at the close of the earlier suit. *See, Aukerman,* 693 F.2d at 697; *Leinoff,* 726 F.2d at 742; *Watkins,* 630 F.2d at 1162. However, those cases involve patent enforcement actions, while the Tabor litigation in this case involved a challenge to the title of the patent. The patentee cannot be expected to litigate enforcement cases at the same time that his title to the patent is being contested in another court.

time the patentee had notice of the defendant's allegedly infringing activities and when this action was finally brought. Not only has the plaintiff been unable to rebut the presumption that the delay was unreasonable, it has also not submitted sufficient evidence to rebut the presumption that the defendant has been materially prejudiced by the delay. Some of the factors which have been recognized to constitute prejudice are the unavailability of important witnesses, the fact that the memories of other witnesses have been dulled, that relevant records have been destroyed or are missing, and that the defendant has made heavy capital investments connected with the allegedly infringing conduct. *Studiengesellschaft Kohle,* 616 F.2d at 1326–1327.

In this case, at least two important witnesses have died: O.J. Gagne, the moving force behind Simplex, and Milton Schimpke, the president and former owner of the defendant. The records of Simplex have also been lost. Thus not only is there a presumption of material prejudice due to the over eight year delay in bringing this suit, there is also actual evidence of prejudice. The plaintiff's claims that other important witnesses are available for trial, along with many important records, and that the defendant has not invested much capital developing the alleged infringing product, are not sufficient to rebut the presumption of prejudice arising out of the eight year delay.[9]

■ The next issue for the court to address is what products produced by the defendant are covered by the laches period. The alleged infringing products complained

of by Simplex in 1969 were mechanical conveyors covered by the so-called "Rudlaff" design. The defendant employed this design until 1979, when it changed to the "Plumridge" type of conveyor. It has been held that where the defendant alters the nature of its infringing activity, a new period of delay begins as to the altered conduct. *Watkins v. Northwestern Ohio Tractor Pullers Ass'n.,* 630 F.2d 1155 (6th Cir.1980); *Celotex Corp. v. Jacuzzi Whirlpool Bath, Inc.,* 211 U.S.P.Q. 232 (N.D.Ill. 1980); *Nordson Corp. v. Graco, Inc.,* 187 U.S.P.Q. 119 (N.D.Ohio 1975); *Keiser v. J. Wiss & Sons Co.,* 173 U.S.P.Q. 594 (D.N.J. 1972); Chisholm, *Patents,* § 19.05(2)(ii), pp. 169–170.[10] There is a dispute as to whether the Rudlaff and Plumridge designs are similar. Even the defendant, in its briefs, notes that it believed the Plumridge design to be further away from the '656 patent that the Rudlaff based products. This being a summary judgment motion, the court cannot resolve disputed issues of material fact. Accordingly, the finding of laches based upon the delay beginning in 1971 shall only bar the plaintiff from recovering pre-suit damages as to the machinery produced pursuant to the Rudlaff design.[11]

■ Estoppel, having more drastic consequences than laches, requires greater proof. To work an estoppel, the defendant must show, in addition to laches, that he was misled in some fashion by the plaintiff. *TWM Mfg. Co., Inc. v. Dura Corp.,* 592 F.2d 346, 350 (6th Cir.1979). To bar prospective relief, the defendant must show either misrepresentations, affirmative acts of misconduct, or intentionally misleading silence by the plaintiff. *Watkins,* 630 F.2d at 1160.

---

9. There is also no evidence that the defendant engaged in any egregious or inequitable conduct, other than the activity alleged to infringe the '656 patent.

10. In *Celotex Corp. v. Jacuzzi Research, Inc.,* 197 U.S.P.Q. 661, the district court held that laches applies to the enforcement of a patent against the defendant generally, and not to particular instances of infringing conduct. This decision was reversed by the Seventh Circuit in an unreported opinion, holding that the defendant must establish that the prior conduct was "the same

or virtually the same" as the conduct later sued upon. The Seventh Circuit's opinion is described in *Celotex Corp. v. Jacuzzi Whirlpool Bath, Inc.,* 211 U.S.P.Q. 232 (N.D.Ill.1980).

11. The court cannot explore the issue of laches as to the Plumridge design as it is unclear when the plaintiff knew or should have known of this product. Even if it is established that the laches period began to run in 1979, this suit was brought within six years, thus the burden would be on the defendant to establish unreasonable delay and material prejudice.

The elusive doctrine of equitable estoppel at least requires representations or conduct which justify an inference of abandonment of the patent claim or that the plaintiff has induced the infringer to believe that its business would be unmolested. For silence to work an estoppel, some evidence must exist to justify an inference that the silence was sufficiently misleading to amount to bad faith. *TWM*, 592 F.2d at 350. It has been held that this determination "can be based on the objective facts, and [the court] need not delve into the defendant's subjective beliefs." *Aukerman*, 693 F.2d at 702.

■ In their letter of November 3, 1969 to the defendant, Simplex stated that "it is the further intention of Simplex to rigorously enforce any patent rights which they obtain on the specific design features." The defendant responded on November 21, 1969, requesting that Simplex specify the details of its patent claims, and that it particularize which of the defendant's machinery was potentially infringing. Simplex responded on December 9, 1969 with details of its design features, but did not elaborate on which of the defendant's products were allegedly infringing. There was no further contact between the patentee and the defendant until April 20, 1978, when the plaintiff unsuccessfully invited the defendant to enter into licensing negotiations.[12] On February 23, 1979, the threat of vigorous enforcement of its patent was once again made to the defendants.[13]

The Sixth Circuit has held that where there is a long period of silence after a threat of enforcement, but not a threat of *immediate* enforcement, the patentee will not be estopped from bringing an enforcement action. *Watkins*, 630 F.2d at 1160. However, the *Watkins* court expressly refrained from deciding whether estoppel would be appropriate where the patentee threatened suit within a certain time, or where it failed to respond to the defendant's request for particulars. *Id.*, 630 F.2d at 1160, n. 5. In that footnote, the court referred to the Seventh Circuit case of *Advanced Hydraulics, Inc. v. Otis Elevator Company*, 525 F.2d 477 (7th Cir.1975), *cert. denied*, 423 U.S. 869, 96 S.Ct. 132, 46 L.Ed.2d 99 (1975). The facts and reasoning of *Advanced Hydraulics* were well summarized in the opinion of the court:

> The exchange of correspondence between Advanced's counsel and Otis is the critical element in the case as far as Otis' plea of estoppel is concerned. As we have shown, the initial letter of Advanced's counsel threatened immediate legal action, if Otis sent no reply within 20 days. In reply, Otis did not adopt a firm noninfringement position. It indicated that it perceived no infringement in light of the breadth of Advanced's claims, but suggested that if Advanced were to supply more specifics as to its claims, Otis would then re-evaluate its position. Advanced, however, elected not to reply to the Otis letter, although it had a virtual duty to give some type of answer. In the absence of any further word from Advanced for five full years, it was natural for Otis to be encouraged to believe that its business could proceed unmolested.

*Advanced Hydraulics*, 525 F.2d at 481. The court went on to hold that the patentee was estopped from bringing its enforcement action.

The case *sub judice* lies between *Watkins* and *Advanced Hydraulics*. Simplex did not and could not threaten immediate enforcement action within a specified time because its patent applications had not yet been approved, and were not until two years later. However, in its reply, the defendant demanded that Simplex supply specifics as to its claims and to particularize which of the defendant's products were potentially infringing. While Simplex did

---

**12.** The plaintiff is chargeable with the conduct of its predecessors in title. *Supra*, p. 1242.

**13.** While this suit was not brought until July, 1983, the court has already found that the period from 1980 until 1983 is excusable delay due to the fact that the title to the '656 patent was in dispute.

send specifics as to its design, it did not expand on which of the defendant's activities it considered to be infringing. As in *Advanced Hydraulics*, it would be reasonable for the defendant to believe that its business could proceed unmolested given Simplex's failure to clarify which of the defendant's products were potentially infringing. In a case which bears some similarity to the one at bar, the Seventh Circuit said:

> When a patentee makes a threat of "vigorous enforcement" which is met with unequivocal resistance by the alleged infringer and follows this with mere sporadic offers of a license over a seven year period, the alleged infringer could, not unreasonably, conclude that the patentee had acquiesced in the alleged infringer's assessment ... and was merely making half-hearted offers of a license in the hope that it might make a little money without much expense.

*Continental Coatings Corporation v. Metco, Inc.*, 464 F.2d 1375, 1378, n. 9 (7th Cir.1972). This court finds that there are no material issues of fact on this issue, and that as a matter of law, the plaintiff is estopped from bringing a patent infringement action as to the defendant's machinery based on the Rudlaff design.

To review, the defendant's motion for summary judgment as to its affirmative defenses of laches and estoppel is granted as to the Rudlaff-based products, and is denied as to the Plumridge-based machinery.[14]

IT IS SO ORDERED.

---

**14.** The plaintiff "countermoved" for summary judgment in its favor on the issues of laches and estoppel. This is an unusual position for the plaintiff to take, as the bulk of its briefs are given over to a detailed presentation as to why there exist disputed issues of material fact. The plaintiff's motion is denied.