**In re STUART R. MEYERS PATENT LITIGATION.**

**Stuart R. MEYERS, Plaintiff,**

v.

**BROOKS SHOE, INC. and Wolverine World Wide, Inc., Defendants.**

**MDL No. 777.**
**No. 88 Civ. 7403 (RO).**

United States District Court, S.D. New York.

Oct. 4, 1989.

---

589

Ostrolenk, Faber, Gerb & Soffen, New York City, for plaintiff; Robert C. Faber, Samuel H. Weiner, Steven I. Weisburd, and William O. Gray, III, of counsel.

Price, Heneveld, Cooper, DeWitt & Litton, Grand Rapids, Mich., for defendants; Richard D. Cooper and Terence J. Linn, of counsel.

OWEN, District Judge:

Meyers is the holder of three patents for cushioned shoe insole designs which issued in 1981, 1984 and 1986, respectively. In November of 1987 he filed this patent infringement action against various shoe retailers, and in the spring of 1988 filed suit against defendants Brooks and Wolverine, similarly alleging patent infringement. Wolverine and Brooks assert laches and equitable estoppel as defenses to the ac-

tion, and they move for summary judgment on these claims; Meyers cross moves for summary judgment on these two defenses.

Meyers first became aware of defendants' allegedly infringing shoes in late 1982 or early 1983. In late August of 1983 he contacted defendants' general counsel by phone and notified her of the alleged infringement. In June of 1983 he wrote to Wolverine following a telephone conversation, requesting that it sign an agreement regarding disclosure of proprietary information regarding his second, pending patent. Wolverine did not sign this agreement. In November of 1983, Meyers wrote to Brooks in an attempt to interest it in entering into a licensing agreement for the first and second patents. Finally, Wolverine/Brooks responded by rejecting Meyers's offer to negotiate a license in December of 1983. Between that time and 1987, when Meyers filed suit against defendants' retailers, defendants continued to develop new shoes which included the allegedly infringing design, expending a great deal of money and effort in the process.

Defendants assert that because plaintiff delayed in bringing suit despite his knowledge of defendants' allegedly infringing designs, plaintiff is now barred from recovery under the doctrines of laches and/or equitable estoppel. Plaintiff cross moves for summary judgment, claiming that delay during the pendency of his second and third patents is excusable and that defendants have not succeeded in showing that prejudice has resulted from the delay. Moreover, plaintiff asserts that the laches defense is unavailable because he brought suit within the six-year period following the conclusion of licensing negotiations with defendants.

■  The appropriateness of laches, an equitable defense which bars a plaintiff from recovering damages for infringement which occurred prior to the filing of the action, must be determined by assessing the particular facts in each case. *Soot v. General Electric Co.*, 681 F.Supp. 157, 162 (S.D.N.Y.1987). In order to assert laches, a defendant must prove that plaintiff unreasonably and inexcusably delayed in as-

serting the infringement claim and that material prejudice to the defendant resulted from the delay. *Jamesbury Corp. v. Litton Industrial Products, Inc.*, 839 F.2d 1544, 1551–52 (Fed.Cir.), *cert. denied,* ── U.S. ──, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988). The six-year statute of limitations period for infringement actions set forth in 35 U.S.C. § 286 is generally applied to the doctrine of laches by analogy, and a delay of six years or more in bringing suit creates a rebuttable presumption in favor of defendant that the delay was unreasonable and that the defendant suffered prejudice. *Soot,* 681 F.Supp. at 163.

■  In this instance, the parties disagree regarding the length of plaintiff's delay in bringing suit for laches purposes. The usual starting point, "the time the patentee knew, or in the exercise of reasonable diligence should have known, of the alleged infringing activity," *Jamesbury,* 839 F.2d at 1552, is tolled when the parties engage in ongoing licensing negotiations. *MGA, Inc. v. Centri–Spray Corp.*, 639 F.Supp. 1238, 1243 (E.D.Mich.1986). Meyers, who first became aware of defendants' infringement in late 1982 or early 1983, claims that negotiations during 1983 tolled the laches period. This argument is rejected here, however, because the notes and correspondence indicate that these negotiations were not "continuous and bilaterally progressing, with a fair chance of success, so as to justify significant delays." *Id.* Accordingly, the laches period runs from late 1982 or early 1983 until the spring of 1988, when Meyers brought suit against Brooks and Wolverine. Because Meyers sued within a six-year period, defendants bear the burden in proving the two elements of laches.

■  Although many of the cases cited by defendants uphold the laches defense where plaintiff has failed to act within a six-year period, *see, e.g., Jamesbury Corp. v. Litton Industrial Products, Inc.*, 839 F.2d 1544 (Fed.Cir.), *cert. denied,* ── U.S. ──, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988), courts have also found laches applicable if there are "sufficient showings of unreasonability of delay [by plaintiff] and prejudice [to defendant]." *Standard Oil Co. v.*

*Rohm and Haas Co.,* 589 F.Supp. 264, 265 (S.D.Tex.1984), *aff'd,* 754 F.2d 345 (Fed.Cir. 1985). In this case, Meyers knew of defendants' allegedly infringing designs as early as 1982 and, although he initiated some contact with them for possible licensing of his patent during 1983, he did not bring suit against them until 1988. By that time defendants had developed many more shoes incorporating the allegedly infringing design, and it is clear that during this period of expansion plaintiff did nothing to protect its patent against defendants' use. The vast majority of defendants' designs are said to infringe Meyers's first and second patents, which are closely related to each other; only one design is said to infringe the third. Because the suit is therefore based primarily on the design embodied in the first patent, the Court rejects plaintiff's contention that it could not bring suit until the issuance of the third patent in 1986. Moreover, plaintiff's inaction during a time when he knew of defendants' activities in the shoe market caused great prejudice to defendants. Not only did defendants engage in a costly design and development program but, in addition, a number of key witnesses, such as designers of several models, the product development manager, advertising manager, and comptroller are no longer in defendants' employ and are now unavailable. Additionally, a number of important documents regarding shoe construction utilizing the allegedly infringing patent were discarded. Accordingly, plaintiff's silence for a period of approximately 5 years while defendants were actively and openly engaging in expanding its line of shoes bars plaintiff from recovering damages for the time prior to this action under the doctrine of laches. *See Lemelson v. Carolina Enterprises, Inc.,* 541 F.Supp. 645, 656–58 (S.D.N.Y.1982) (where action commenced four to five years after defendant's open and continuous sale of infringing item and development of new product incorporating patent, and where defendant's substantial expenditures and its entering into licensing agreement with foreign manufacturer caused substantial change in position, defendant demonstrated prejudice resulting from plaintiff's delay and court upheld laches defense); *Advanced Hydraulics, Inc. v. Eaton Corp.,* 415 F.Supp. 283, 284–85 (N.D.Ill.1976) (where defendant rejected offer of license and took position of noninfringement and next contact between parties occurred five years later when plaintiff brought suit, defendant's key witness had died, and defendant's business operations had continued as result of plaintiff's failure to assert claims in timely manner, court granted defendant's summary judgment motion on laches); *Lukens Steel Co. v. American Locomotive Co.,* 197 F.2d 939 (2d Cir.1952) (although only five years elapsed between time plaintiff learned of infringement and brought suit, court found laches defense applicable where assignee of patent presented design embodying patent to infringer and did nothing while infringer began costly expansion program embodying patent). Accordingly, defendants' motion for summary judgment on the laches defense is granted and plaintiff's cross motion for summary judgment on the laches defense is denied. Plaintiff's claims for damages predating the commencement of this action are dismissed.

■ Plaintiff's claims for injunctive and other prospective relief are also barred, because defendant may equitably estop plaintiff from seeking such relief. Equitable estoppel bars a plaintiff from obtaining an injunction or damages and requires the alleged infringer to show the two elements of laches (unreasonable, inexcusable delay in filing suit and prejudice to the infringer) plus "affirmative conduct by the patentee inducing the belief that it abandoned its claims against the alleged infringer, and ... detrimental reliance by the infringer." *Jamesbury Corp. v. Litton Industrial Products, Inc.,* 839 F.2d 1544, 1553–54 (Fed.Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988). That plaintiff unreasonably delayed in filing suit and that the delay prejudiced these defendants is clear, and has been discussed at length in the laches context. It is also clear that plaintiff's silence was misleading, indeed, so misleading as to amount to bad faith. *Id.* at 1554. After plaintiff's

aggressive assertion of the alleged claim and his active pursuit of licensing agreements, plaintiff's sudden, prolonged silence could only convey the impression that plaintiff had knowingly abandoned his claim. This impression clearly induced reliance on defendants' part, as they continued to invest heavily in the development and marketing of shoes that plaintiff now seeks to enjoin. Accordingly, defendants' motion for summary judgment on claims for injunctive and prospective relief is granted, and plaintiff's cross motion on the equitable estoppel defenses is denied.

So ordered.