ADELBERG LABORATORIES, INC.,
and Marvin Adelberg,
Plaintiffs–Appellants,

v.

MILES, INC., Defendant–Appellee.

No. 90–1173.

United States Court of Appeals,
Federal Circuit.

Dec. 19, 1990.

**1268**

Mario A. Martella, Beehler & Pavitt, Los
Angeles, Cal., argued, for plaintiffs-appellants.  With him on the brief was Maurice
B. Pilosof.

Albert J. Hillman, Townsend & Townsend, San Francisco, Cal., argued, for defendant-appellee.  With him on the brief
was William J. Bohler.

Before MICHEL and LOURIE, Circuit Judges, and BALDWIN, Senior Circuit Judge.

LOURIE, Circuit Judge.

Adelberg Laboratories, Inc. and Marvin Adelberg (collectively "Adelberg") appeal the decision of the United States District Court for the Central District of California, CV 88–5798–WMB (September 25, 1989), granting defendant-appellee Miles, Incorporated's motion for summary judgment on grounds of laches and estoppel and dismissing the patent infringement action Adelberg brought against Miles.  Since we believe that the district court did not err in concluding that there was no genuine issue as to any material fact and that defendant was entitled to judgment as a matter of law, we affirm.

## BACKGROUND

In 1970, Adelberg offered Cutter Laboratories, Miles' predecessor-in-interest,[1] a license under a pending patent application to make a roller clamp to regulate the flow of liquid through intravenous tubes used by hospitals.  Cutter refused this offer.  In 1971, Cutter entered into a confidential technology agreement with Abbott Laboratories.  Article III, paragraph 3, of that agreement provided that:

> [e]ach party shall and hereby does grant to the other a nonterminable, nontransferable, worldwide, nonexclusive royalty-free license to utilize the results of any such research or development work or any inventions resulting therefrom or otherwise owned or controlled by it, in the manufacture, use and sale of intravenous solution containers, closures or administration and additive equipment ... [s]uch license shall extend to all such inventions, developments, and know-how now existing or hereafter conceived or developed by either party....

1.  Since Cutter was the party whose actions originally provoked Adelberg's claim of patent infringement and with whom Abbott's contacts were made, we will refer to Cutter in this opinion when those actions and contacts are discussed.  Since Miles, as successor-in-interest, was the party sued, we will refer to Miles when positions in this lawsuit are discussed.

In August 1972, Adelberg was issued the original of the patent in suit, U.S. Patent 3,685,787, covering the roller clamp,[2] and in 1973, Adelberg granted Abbott an exclusive license to use and sell the patented invention. Article II of this agreement gave Abbott the right to grant sublicenses, provided that each sublicensee was subject to the same requirements as Abbott, including the obligation to pay royalties to Adelberg. The right to manufacture the patented invention was included in the license only to the extent that, if Adelberg failed to fill Abbott's purchase orders, Abbott would automatically have obtained or could obtain a license to manufacture. Adelberg was, at this time, unaware of the technology agreement between Abbott and Cutter.

Cutter began to market its clamps in 1977. Adelberg and Abbott were both aware of the manufacture and sale of Cutter's clamp and believed that it was covered by Adelberg's patent. As the exclusive licensee of Adelberg, Abbott had the right to enforce the patent. Accordingly, in 1977, and later in 1978, Abbott, with the knowledge but not the participation of Adelberg, charged Cutter with infringement of the patent. Miles has asserted that Adelberg also telephoned Cutter concerning the alleged infringement in May 1977.

In September 1977, Cutter responded to Abbott that it did not believe that its clamp infringed. Cutter further told Abbott that if the patent did read on its clamp, the clamp was covered under the technology agreement between Abbott and Cutter and that Cutter was therefore entitled to a sublicense. During the period from September 1977 to January 1978, Abbott had communications with Adelberg concerning Cutter's claim to a sublicense, indicating that Cutter was relying on the technology agreement. Adelberg thus was aware of Cutter's position.

In November 1978, Abbott's general counsel agreed with Cutter and told Adelberg that if the Cutter clamp was found to be covered by the patent, Cutter would either be sublicensed or would have a right to a sublicense based on the technology agreement. Neither Abbott nor Cutter ever revealed the contents of the technology agreement to Adelberg or gave a copy of the agreement to Adelberg.

Adelberg never contacted Cutter to indicate that it did not accept Cutter's arguments that it did not infringe or that Cutter had a right to a sublicense under the Adelberg patent, nor did Abbott. The only contacts between Adelberg and Cutter after the 1977–78 period were two attempts by Adelberg, one in 1982 and the other in 1987, to sell clamps to Cutter.

Cutter's sales of its own clamp grew from zero in 1977 to between seventeen and twenty million units per year in 1983, and then continued at a level of about five and a half million per year after 1983. In 1980, Cutter spent approximately $60,000 to have an additional mold built in order to increase its production capacity.

The Adelberg–Abbott exclusive license was converted to a non-exclusive license in late 1985. Then, in September 1988, ten years after the last contact between Abbott and Cutter concerning the alleged patent infringement, Adelberg filed suit for patent infringement against Miles, as successor-in-interest of Cutter, in the United States District Court for the Central District of California. Miles moved for summary judgment on the defenses of laches and estoppel and argued that the action for patent infringement should be dismissed. The district court granted Miles' motion and dismissed the action. Adelberg appealed.

## ISSUES

1. Whether the district court erred in concluding that there was no genuine issue as to any material fact with regard to Miles' defense of laches and that Miles was entitled to judgment as a matter of law.

2. The patent was reissued as U.S. Patent Re. 31,584 on May 15, 1984; it is the reissue patent that is involved in the present suit.

2. Whether the district court erred in concluding that there was no genuine issue as to any material fact with regard to Miles' defense of estoppel and that Miles was entitled to judgment as a matter of law.

## DISCUSSION

### A. Summary Judgment

Summary judgment is appropriate when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Jamesbury Corp. v. Litton Indus. Prods., Inc.*, 839 F.2d 1544, 1548, 5 USPQ2d 1779, 1782 (Fed.Cir.), *cert. denied*, 488 U.S. 828, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988). The district court must view the evidence in the light most favorable to the nonmoving party, any doubts being resolved in favor of the party opposing the motion. The movant has the burden of demonstrating the absence of any genuine issue of material fact. *Jamesbury Corp.*, 839 F.2d at 1548, 5 USPQ2d at 1782.

Neither party disputes the above-mentioned facts. Moreover, these facts are sufficient to permit resolution of the case. Therefore, we conclude that there is no genuine issue as to any material fact and thus that the district court did not err in so concluding. We next determine whether the court erred in concluding that Miles was entitled to judgment as a matter of law based on the established facts.

### B. The Laches Defense

■ In patent infringement actions, the equitable defense of laches bars the recovery of damages for any patent infringement occurring prior to the filing of the lawsuit when a patent owner sits on his rights for an unreasonable period of time to the prejudice of an accused infringer. The application of the defense of laches is within the discretion of the trial court and will not be set aside absent a showing of abuse of discretion. *Id.* at 1551, 5 USPQ2d at 1785. Abuse of discretion may be found when the district court's decision is clearly unreasonable, the decision is based on an error of law, the court's findings of fact are clearly erroneous, or the record contains no evidence upon which the court rationally could have based its decision. *Western Elec. Co., Inc. v. Piezo Technology, Inc.*, 860 F.2d 428, 430–31, 8 USPQ2d 1853, 1855 (Fed.Cir.1988).

■ To establish laches, the defendant must prove 1) unreasonable and inexcusable delay by the plaintiff in filing suit and 2) material prejudice resulting from the delay. The period from which delay is measured begins at the time the patentee knew, or in the exercise of reasonable diligence should have known, of the allegedly infringing activity. When a patentee delays more than six years before filing suit, the delay is presumed to be both unreasonable and prejudicial to the defendant. *Jamesbury Corp.*, 839 F.2d at 1552, 5 USPQ2d at 1785.

The district court concluded that there was no dispute that the delay by Adelberg exceeded six years and, therefore, that Miles had presumptively established laches. The court also concluded that, based on the undisputed fact that Cutter sold millions of allegedly infringing clamps during the period of delay, there was no genuine issue that Miles was actually prejudiced by Adelberg's delay.

Adelberg attempted to excuse its delay on the basis that Cutter was licensed under the patent and that the license was a sufficient justification for not bringing suit. The district court concluded that Adelberg's subjective belief that it had a sound reason for delay was not a proper justification for that delay in bringing suit. The court analogized this situation to that in *MGA, Inc. v. Centri–Spray Corp.*, 639 F.Supp. 1238, 1 USPQ2d 1308 (E.D.Mich. 1986), where the patentee argued that because there might have been some doubt concerning the future ownership of the patent, he was prevented from bringing an action for patent infringement.

The court, in that case, concluded that the "mere fact that [a] trustee had the power to set aside the assignment [of the patent] and may have threatened to do so,

does not establish that there was a legal dispute over title." *Id.* at 1243, 1 USPQ2d at 1310. In this case, the district court concluded that, as in *MGA*, a potential legal impediment to an infringement action, such as the defense of having a sublicense, is not an excuse for not pursuing the infringement action.

Adelberg now argues on appeal that its belief that Cutter was licensed constituted a sound reason for its delay. It asserts that if it had sued when it knew that the accused infringer had a license under the patent, it could have been sanctioned under Rule 11 of the Federal Rules of Civil Procedure. Adelberg further argues that the district court did not consider all of the relevant circumstances and that since damages were only sought for the period after November 1985, when the exclusive license to Abbott became non-exclusive, the events prior to that date are irrelevant to any asserted prejudice.

We conclude that the district court adequately considered the relevant circumstances with regard to Miles' defense of laches. The district court considered Adelberg's knowledge of Cutter's allegedly infringing activity, the period of delay in bringing suit, the lack of a reasonable excuse for this delay, and the actual prejudice incurred by Cutter during this delay.

■ Adelberg admits that it knew of Cutter's allegedly infringing activity as early as September 1977 and thus could have brought suit after that time. However, it did not bring suit until September 1988, a delay of eleven years. Since this delay exceeds six years, Miles was entitled to a presumption that the delay was both unreasonable and prejudicial to Miles. *See Jamesbury Corp.*, 839 F.2d at 1552, 5 USPQ2d at 1785.

As to Adelberg's argument that it was excused from suing because Cutter had a license under its patent, we do not necessarily agree with the district court that a reasonable belief that Cutter was licensed under the patent would not have been an adequate excuse for not suing. In the case before us, however, we do not accept, nor perhaps did the district court, that Adel-berg in fact decided, or had a reasonable basis for deciding, that Cutter was properly licensed and that, on that basis, it decided not to sue.

The exclusive license between Adelberg and Abbott gave Abbott the right to *use* and *sell* clamps covered by Adelberg's patent, but to manufacture only under certain circumstances not here applicable, *i.e.*, as a back-up right in case Adelberg did not supply the clamps for which it was obligated under a supply provision. Thus, Adelberg could not reasonably have considered Cutter to be immunized from suit by being a sublicensee of Abbott, since Cutter was not buying clamps from Adelberg or Abbott and was itself making the allegedly infringing devices. As Abbott had no right to make clamps under its license, except for the irrelevant back-up right, it could not license Cutter to manufacture. Moreover, no royalties were paid to Adelberg on account of Cutter's sales, as would have been required for a sublicense. Adelberg never saw a written copy of a sublicense, as a patentee would expect. These facts are therefore not consistent with Adelberg having a reasonable belief that Cutter was properly licensed under its patent. Further, Adelberg asserts that it never saw the Abbott–Cutter technology agreement. If that is correct, how could Adelberg be so certain that Cutter was properly sublicensed under its patent that it risked sanctions for bringing a patent infringement suit?

■ The case law has established that delay can be excused when an accused infringer is put on notice that after other litigation has been disposed of, he can expect to be sued. *Jamesbury Corp.*, 839 F.2d at 1553, 5 USPQ2d at 1786. The delay here began in September 1977 and extended for eleven years until suit was brought. If Adelberg truly believed that Cutter was immune from suit because of its license, but hoped to assert its patent against Cutter in the future when the sublicense might become ineffective, its position here would be much stronger and more credible if it had informed Cutter that it considered Cutter to be an infringer, but for its current

sublicense, and that it intended to preserve its right to sue. It did not do that and it must suffer the consequences of that inaction. Accordingly, Adelberg has not rebutted the presumption that the delay was unreasonable by showing an acceptable excuse for the delay.

Adelberg has also failed to rebut the presumption of material prejudice to Cutter as a result of Adelberg's delay in bringing suit. Making heavy capital investment and increasing production can constitute prejudice. *See Studiengesellschaft Kohle v. Eastman Kodak Co.*, 616 F.2d 1315, 1326–27, 206 USPQ 577, 588 (5th Cir.1980). Here, Cutter expended capital to expand its business. It built up its clamp business to a maximum of about seventeen million clamps per year by the seventh year of Adelberg's delay, while it had reason to believe that Adelberg was not going to sue for patent infringement. This activity could have been costly to Cutter if Adelberg had successfully sued and recovered lost profits or increased damages to compensate for the infringement. Thus, Miles has shown adequate prejudice by Adelberg's delay in bringing suit.

Adelberg argues that it is only seeking damages for the period beginning November 1985, when its license to Abbott became non-exclusive. It claims that Cutter then no longer could claim the defense of a sublicense and that any earlier delay on its part should not bar its suit. We do not accept this argument for several reasons.

■ First, the time period during which Adelberg seeks damages is not decisive to the defense of laches. What are crucial here are the date when Adelberg knew or should have known of Cutter's alleged infringement, the date when Adelberg finally brought suit, and what happened in between. That history supports the judgment of the trial court. Laches applies until the date of suit.

■ Second, as noted above, we cannot conclude that Adelberg deliberately refrained from suit because it truly believed that Cutter was properly licensed. Cutter's manufacture of the clamps could not have been licensed under a contract that did not grant the unfettered right to make the invention. Adelberg's argument that Abbott (and hence Cutter) did have a right to manufacture is specious, since, as noted above, the only such right was the irrelevant back-up right. Adelberg obviously knew that it had no such obligation to Cutter and that Cutter therefore had no right to manufacture.

Adelberg's failure to communicate to Cutter that it was refraining from suit only because of the existence of the license further weakens Adelberg's position. Even when the license became non-exclusive, Adelberg waited three years to sue and never in the meantime told Cutter that the sublicense it claims Cutter had had been or would be terminated. This court has stated that an obligation exists on the part of a patentee to communicate to an accused infringer whom it has contacted and failed to sue because of other litigation that it was not acquiescing in the infringement. *Jamesbury Corp.*, 839 F.2d at 1553, 5 USPQ2d at 1786. That obligation is equally applicable here.

Furthermore, the change from an exclusive license to a non-exclusive license does not necessarily mean that Abbott no longer had the right to sublicense. A non-exclusive license can contain the right to sublicense; we have no evidence of record to indicate that the new license here lacked this right. We believe that the argument that Adelberg's patent infringement claim was revived after its earlier delay as a result of the change in the Abbott license from being exclusive to non-exclusive is simply an afterthought generated for purposes of this litigation.

We have considered Adelberg's other arguments, but find them unpersuasive; we therefore hold that the district court did not err in granting Miles' motion for summary judgment on the defense of laches.

### C. The Estoppel Defense

■ While the defense of laches bars only retrospective relief, the defense of estoppel totally bars any assertion of the patent claim. *Hottel Corp. v. Seaman*

*Corp.,* 833 F.2d 1570, 1573, 4 USPQ2d 1939, 1941 (Fed.Cir.1987). Estoppel may apply when there is (1) unreasonable and inexcusable delay in filing suit, (2) prejudice to the defendant as a result of the delay, (3) affirmative conduct by the patentee to induce the belief that it had abandoned its claim, and (4) detrimental reliance on this conduct by the accused infringer. *Id.,* 833 F.2d at 1573, 4 USPQ2d at 1941.

The district court concluded that there was no genuine issue as to whether Adelberg unreasonably delayed in bringing suit, that Adelberg knew of Cutter's product and accused Cutter of infringement while consulting with and encouraging Abbott to pursue a claim for infringement. The court concluded that Adelberg ceased pursuing this claim and then waited ten years to file suit. The court also concluded that there was no genuine issue as to whether Cutter was actually prejudiced because of Adelberg's delay in view of Cutter's investment in new facilities and continued sales. Adelberg was answerable for Abbott's efforts as well as its own, the court concluded; Adelberg induced Cutter to believe that it had abandoned its claim of infringement, thus satisfying the "affirmative conduct" element of the estoppel defense. The court also concluded that Cutter's continued sales and new capital investment demonstrated, without there being a genuine issue, that Cutter detrimentally relied on Adelberg's conduct. The result was that there was no genuine issue as to any material fact with regard to the defense of estoppel and that Miles was entitled to judgment as a matter of law.

Adelberg argues that the district court wrongly relied for its estoppel analysis on the presumptions applicable to a laches defense, that its silence was not in bad faith, that Cutter could not have reasonably believed that Adelberg had abandoned its infringement claim, and that Cutter's generation of documents in anticipation of being sued by Adelberg indicated that it did not believe Adelberg had abandoned its claim of infringement.

We find all of these arguments to be without merit. The district court expressly noted that "[t]he presumption applicable in laches is not used in estoppel"; moreover, it did not rely on any presumptions.

As noted above in our laches discussion, the period of delay was eleven years, without any reasonable excuse; we do not believe that the district court erred in concluding that this delay was unreasonable. *See Naxon Telesign Corp. v. Bunker Ramo Corp.,* 686 F.2d 1258, 1261, 1265–67, 216 USPQ 658, 660, 664–65 (7th Cir.1982) (an eight-year delay was sufficiently long to give rise to an estoppel defense). We also hold that the district court did not err in concluding that Cutter was materially prejudiced by this delay since the undisputed facts demonstrate that Cutter invested in facilities and continued its sales on the assumption that it was not going to be sued.

With regard to the "affirmative conduct" element of an estoppel defense, this court has previously held that "something more than simple silence must be shown to support an estoppel." *Studiengesellschaft Kohle v. Dart Industries,* 726 F.2d 724, 729, 220 USPQ 841, 844 (Fed.Cir.1984). The nature of the affirmative conduct that estoppel requires includes misrepresentations, affirmative acts of misconduct, or intentionally misleading silence by the patentee. *Broomall Industries v. Data Design Logic Systems,* 786 F.2d 401, 406, 229 USPQ 38, 40–41 (Fed.Cir.1986).

It is undisputed that there were numerous communications in 1977 and 1978 between Adelberg and Abbott about Cutter's alleged infringement. Abbott, at Adelberg's insistence, charged Cutter with infringement in June 1977. Adelberg has not disputed Miles' contention that Adelberg itself contacted Cutter regarding the allegedly infringing use of its clamp. These affirmative acts on the part of Adelberg's exclusive licensee and Adelberg itself ceased in 1978 and, except for two offers for the sale of clamps to Cutter in 1982 and 1987, which did not indicate that Adelberg was still pursuing its patent infringement claim, Adelberg did not assert its rights against Cutter until September 1988, ten years later, when Adelberg

brought suit against Miles. This long period of silence by Adelberg and Abbott after first affirmatively asserting patent infringement suffices to support the conclusion that Adelberg and Abbott reasonably induced Cutter to believe that Adelberg had abandoned its claim. *See Hottel Corp.*, 833 F.2d at 1574, 4 USPQ2d at 1941 ("[i]n the cases that have applied intentionally misleading silence in the patent infringement context, the patentee threatened immediate or vigorous enforcement of its patent rights and then did nothing for an unreasonably long time").

Bad faith on the part of the patentee is not, as Adelberg asserts, a requirement of an estoppel defense. All that is required is that the patentee conduct itself in such a way as to induce the belief that it has abandoned its claim, regardless of its good or bad faith. Adelberg and Abbott did so here.

Adelberg argues that Cutter's generation of documents in anticipation of being sued indicates that Cutter did not actually believe that Adelberg had abandoned its claim. We believe that the district court did not err in deciding this issue. The requirement that the patentee's conduct (or conduct plus prolonged silence) induce a belief that he has abandoned his claim does not require the alleged infringer to prove that he was convinced that the patentee abandoned his claim. Certainly Cutter might have reasonably believed that Adelberg had abandoned its claim, but still wanted to prepare itself in case Adelberg did bring a claim against it. Cutter has not lost its right to reasonably rely on Adelberg's conduct and silence by taking sensible measures to protect itself.

As for the detrimental reliance requirement, it is clear that the court did not err in concluding that Cutter reasonably believed that Adelberg was abandoning its rights, after which Cutter built up its clamp business in reliance on this belief to its potential detriment.

Finally, Adelberg asserts that the question whether a patent license with Cutter existed was a genuine issue of material fact and thus that the grant of summary judgment was error. We disagree. The district court held that it did not matter whether a sublicense existed, as that fact would not constitute an excuse for the long silence and delay. We do not affirm or reject that conclusion. The issue whether a license (or sublicense) exists based on a given set of facts is one of law, *Met–Coil Systems v. Korners Unlimited*, 803 F.2d 684, 687, 231 USPQ 474, 476 (Fed.Cir.1986), and we hold that, under the established facts, there was no sublicense that immunized all of Cutter's activities. It is also clear that Adelberg could not have reasonably believed that the sublicense existed either, so that this did not constitute a viable excuse for Adelberg's delay.

We have considered all of Adelberg's arguments concerning the correctness of the district court's judgment on the basis of estoppel and conclude that they are unpersuasive; the district court did not err in concluding, on summary judgment, that Adelberg should be estopped from pursuing its claim against Miles for patent infringement.

## CONCLUSION

Adelberg has not raised a genuine issue as to any material fact. The district court did not err in concluding that Adelberg did not have a reasonable excuse for the delay and that Miles experienced material prejudice as a result of the delay. Thus, the district court did not err in granting Miles' motion for summary judgment with regard to laches. Adelberg's conduct and subsequent silence, and Miles' reasonable reliance on that conduct and silence, support the judgment of estoppel by the district court.

AFFIRMED.