In re STUART R. MEYERS
PATENT LITIGATION.

Stuart R. MEYERS, Plaintiff,

v.

ASICS TIGER CORP., Defendant.

Stuart R. MEYERS, Plaintiff,

v.

HYDE ATHLETIC
INDUSTRIES, Defendant.

Stuart R. MEYERS, Plaintiff,

v.

ASICS CORP., Defendant.

MDL No. 777.
Nos. 88 Civ. 7401 (RO), 88 Civ. 7404
(RO) and 89 Civ. 5699 (RO).

United States District Court,
S.D. New York.

March 6, 1990.

Ostrolenk, Faber, Gerb & Soffen, New York City, for plaintiff; Robert C. Faber, Samuel H. Weiner, Steven I. Weisburd and William O. Gray, III, of counsel.

Christie, Parker & Hale, Pasadena, Cal., for defendant Asics Tiger Corp.; Carl Kustin, of counsel.

Wolf, Greenfield & Sacks, Boston, Mass., for Hyde Athletic Industries; David Wolf, John L. Welch and Warren A. Kaplan, of counsel.

Dike, Bronstein, Roberts & Cushman, Boston, Mass., for defendant Asics Corp.; Gregory D. Williams, of counsel.

## OPINION AND ORDER

OWEN, District Judge:

Plaintiff Stuart Meyers holds three patents for cushioned running shoe insole designs, issued in 1981, 1984 and 1986 respectively. The issue raised by this motion is

whether plaintiff's patent claims against these two shoe manufacturers, Hyde Athletic Industries and Asics Corporation, and against Asics Tiger Corp. ("ATC"), a retailer and subsidiary of Asics, are barred by laches and equitable estoppel. In a related suit by plaintiff alleging patent infringement by two other manufacturers, this Court granted summary judgment for defendants based on laches and estoppel. *Meyers v. Brooks Shoe, Inc.*, 721 F.Supp. 588 (1989).

The relevant facts in this case are similar to those in *Brooks*. Defendants advertise and sell various athletic shoes in the United States. Plaintiff's deposition testimony indicates he became aware of various models of defendants' shoes and began testing them for infringement by late 1982.

Plaintiff contacted ATC in 1983 and suggested it negotiate a license with him.[1] By 1984, Plaintiff had asserted in phone calls and a letter to ATC's attorney that several ATC models infringed two existing patents, as well as a third patent application subsequently granted in 1986.[2] ATC evaluated plaintiff's claims, decided there was no infringement, and declined to negotiate with him. Save for one letter from plaintiff's attorney to ATC in January 1985 rebutting ATC's conclusions,[3] to which ATC did not reply, plaintiff and ATC had no further contact until he filed this action in May of 1988.

Plaintiff also contacted Hyde in 1983, inviting Hyde to enter into licensing negotiations.[4] Hyde made the same determinations that ATC had with respect to alleged infringements and, in a letter to plaintiff, declined to enter into license negotiations.[5] Hyde also had no further contact with plaintiff until this action was filed. Throughout this period, plaintiff had no contacts with ATC's parent corporation, Asics.

██ To prevail on a claim of laches, a defendant must prove that the plaintiff unreasonably and inexcusably delayed in asserting an infringement claim and that material prejudice to the defendant resulted from the delay. *Jamesbury Corp. v. Litton Industrial Products, Inc.*, 839 F.2d 1544, 1551–52 (Fed.Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 80, 102 L.Ed.2d 57 (1988).[6] The usual starting point for the laches period, "the time patentee knew, or in the exercise of reasonable diligence should have known, of the alleged infringing activity," *Jamesbury,* 839 F.2d at 1552, is tolled when the parties engage in ongoing licensing negotiations. *MGA, Inc. v. Centri–Spray Corp.,* 639 F.Supp. 1238, 1243 (E.D.Mich.1986). However, as in *Brooks,* I reject plaintiff's argument that the 1983 "negotiations" tolled the laches period. The contacts between plaintiff and defendants were sporadic, and none of the defendants indicated they were prepared to

1. Plaintiff wrote: "I should be obliged if you would let me know promptly if you are prepared to enter into negotiations with a view to obtaining licenses on mutually acceptable terms under one or all of these patents and patent applications, manufacture and sale of shoes incorporating the claimed features of said patents and applications."

2. For example, on May 7, 1984, plaintiff wrote: "This is a follow up letter to my telephone message on this date. I have had extensive analysis done by [a] law firm ... and it has been determined that my two patents dominate the athletic foot wear line presently being put on the market by your client...."

3. On January 23, 1985, plaintiff's attorney wrote ATC's attorney a letter, stating: "We continue to offer a license under Meyers' patents. Settlement now is available at a more economically attractive level than after the Meyers patents are successfully litigated. If progress may be made

through serious negotiation, we are receptive to meeting with you."

4. Plaintiff's letter to Hyde contained the exact language as his letter to ATC, quoted in footnote 1.

5. On November 16, 1983, Hyde wrote plaintiff: "I am in receipt of your letter of November 9, 1983.... I have studied your patents and find nothing in them of interest to our company. I see no purpose to meet with you or to further discuss any items in your patents."

6. Although a delay of six or more years creates a rebuttable presumption that the delay was unreasonable and that defendant suffered prejudice, *Soot v. General Electric Co.,* 681 F.Supp. 157, 163 (S.D.N.Y.1987), I find that defendants bear the burden of proof on their claim of laches because plaintiff filed this action within six years after the laches period began to run in late 1982 or early 1983.

pursue negotiations to a successful conclusion. In fact, plaintiff's inquiries to defendants regarding licensing constituted no more than offers to negotiate on the part of the plaintiff, an offer defendants refused.

■ Defendants have sustained their burden of showing plaintiff's delay was unreasonable and resulted in prejudice. Plaintiff's claim that his delay was due to his inability to retain a law firm is a "sufficient [showing] of unreasonability of delay [by plaintiff] and prejudice [to defendant]." *Standard Oil Co. v. Rohm and Haas Co.,* 589 F.Supp. 264, 265 (S.D.Tex.1984), *aff'd,* 754 F.2d 345 (Fed.Cir.1985).

Moreover, plaintiff's delay has caused defendants extreme prejudice. From the early 1980s, when plaintiff first became aware of defendants' allegedly infringing patents, until 1988, when plaintiff finally brought suit, defendants had developed many more shoes incorporating the allegedly infringing design. In addition, a number of key witnesses, including designers and managers, are no longer in defendants' employ or available. *See Meyers v. Brooks Shoe, Inc.* (citing *Lemelson v. Carolina Enterprises, Inc.,* 541 F.Supp. 645, 656–58 (S.D.N.Y.1982); *Advanced Hydraulics, Inc. v. Eaton Corp.,* 415 F.Supp. 283, 284–85 (N.D.Ill.1976); *Lukens Steel Co. v. American Locomotive Co.,* 197 F.2d 939 (2d Cir.1952)). Given defendants' prejudice, plaintiff is barred from recovering damages under the doctrine of laches.

■ Turning to the issue of equitable estoppel, this doctrine requires that defendants prove the two elements of laches plus "affirmative conduct" inducing detrimental reliance. *Jamesbury Corp. v. Litton Industrial Products, Inc.; Studiengesellschaft Kohle, m.b.H. v. Dart Industries, Inc.* 726 F.2d 724 (Fed.Cir.1984). Defendants already have satisfied their burden with respect to laches. Furthermore, as in *Brooks,* I find that plaintiff's sudden prolonged silence of several years after his initial aggressive advocacy of his purported claims was so misleading as to amount to

bad faith. Plaintiff had no contact whatsoever with Hyde from 1983 until 1988, with ATC from 1985 until 1988, and with Asics at any time. Such silence could only convey the impression that plaintiff knowingly had abandoned any alleged claims. Defendants therefore properly relied on this impression while undertaking the extensive development and marketing plaintiff now seeks to enjoin.

■ Finally, I again reject plaintiff's contentions that he could not bring suit until the third patent issued in 1986, and that the 1986 patent triggers a new time period for the laches analysis.[7] This action is based primarily on the design embodied in the first patent. As early as his first accusations of infringement, Meyers has referred to his three patents collectively, and he has acknowledged that they are interrelated. Considering the admitted interrelationship of the patents, plaintiff could and should have brought suit on the first patent immediately after suspecting infringement thereon; had he done so, he easily could have amended his complaint to include the other patents as they issued. However, having taken one position through his conduct for purposes of enforcing his rights, plaintiff is equitably estopped from now changing that position in an unsuccessful attempt to resuscitate this lawsuit. *See, e.g., Baron v. Lombard,* 71 A.D.2d 823, 419 N.Y.S.2d 388 (1979), *aff'd,* 50 N.Y.2d 896, 430 N.Y.S.2d 591, 408 N.E.2d 920 (1980); *Ryder Truck Rental, Inc. v. Williamstown W. & C. Co.,* 62 Misc.2d 848, 309 N.Y.S.2d 508 (1970).

Defendants Hyde, Asics and ATC having demonstrated that plaintiff's claims against them are barred by the doctrines of laches and equitable estoppel, their motions are granted and this action is dismissed as to them.

So ordered.

---

**7.** This issue is not relevant with respect to defendant Hyde since plaintiff does not accuse Hyde of having infringed that particular patent.