**Stuart R. MEYERS, Plaintiff–Appellant,**

v.

**ASICS CORP., and Asics Tiger Corp., and Hyde Athletics Industries, Defendants–Appellees.**

**Nos. 90–1305, 91–1307 and 91–1308.**

United States Court of Appeals, Federal Circuit.

Sept. 4, 1992.

Robert C. Faber, Ostrolenk, Faber, Gerb & Soffen, New York City, argued for plaintiff-appellant. With him on the brief were Samuel H. Weiner, Steven I. Weisburd and William O. Gray, III.

David G. Conlin, Dike, Bronstein, Roberts & Cushman, Boston, Mass., argued for defendants-appellees, ASICS Corp. With him on the brief were Gregory D. Williams and Sewall P. Bronstein. David Wolf, Wolf, Greenfield & Sacks, P.C., Boston, Mass., argued for defendants-appellees, Hyde Athletics Industries. With him on the brief was John L. Welch.

Carl Kustin, Christie, Parker & Hale, Pasadena, Cal., was on the brief for defendants-appellees, ASICS Tiger Corp.

Before RICH, NEWMAN and ARCHER, Circuit Judges.

ARCHER, Circuit Judge.

Stuart R. Meyers (Meyers) appeals the summary judgment of the United States District Court for the Southern District of New York, *Meyers v. Asics Tiger Corp.*, 731 F.Supp. 640, 17 USPQ2d 1078 (S.D.N.Y.1990), in favor of Asics Corp. (Asics), Asics Tiger Corp. (ATC), and Hyde Athletics Industries (Hyde) (collectively the defendants) on their defenses of laches and equitable estoppel. We reverse and remand.

## BACKGROUND

Meyers obtained three patents for therapeutic shoe sole structures, U.S. Patent Nos. 4,297,797 (the '797 patent), 4,445,283 (the '283 patent), and 4,627,177 (the '177 patent), issued November 3, 1981, May 1, 1984, and December 9, 1986, respectively. The defendants advertise and sell various athletic shoes in the United States. As found by the district court, Meyers' deposition testimony indicated that by late 1982 Meyers became aware of the possibility that the defendants' shoe designs infringed Meyers' patents.

Meyers sent ATC a letter dated November 9, 1983, requesting a meeting with the president of ATC and suggesting that ATC negotiate a license under Meyers' '797 patent and pending patent applications. By 1984, Meyers had asserted in phone calls, and in a letter to ATC's attorneys that several of ATC's shoe models infringed Meyers' existing '797 and '283 patents. ATC's attorneys evaluated Meyers' infringement claims and, in a letter dated June 21, 1984, informed Meyers that ATC's shoe models did not infringe Meyers' patents, and that there was no need for a license from Meyers.

In a January 23, 1985 letter from Meyers to ATC, Meyers refuted ATC's conclusion of no infringement, and again offered a license under Meyers' patents. There was no other contact between Meyers and ATC prior to the filing of suit in the U.S. District Court for the Central District of California on May 27, 1988. Meyers alleged that ATC infringed and induced infringement of the '797, '283, and '177 patents.

Meyers also sent Hyde a letter dated November 9, 1983 and suggested that Hyde enter into licensing negotiations under the '797 patent and the pending applications. Hyde responded in a November 16, 1983, letter that it had no interest in Meyers' patents and declined to meet with Meyers. Hyde and Meyers had no further contact until Meyers filed suit in May 1988 in the same district court in California alleg-

ing that Hyde infringed and induced infringement of Meyers' three patents.

Meyers had no contact with Asics, ATC's parent corporation, until suit was filed in the U.S. District Court for the Southern District of New York on May 23, 1988, claiming that Asics infringed and induced the infringement of Meyers' three patents.

In November 1987, Meyers filed a patent infringement suit against various shoe retailers, and in the spring of 1988, filed against Brooks Shoe, Inc. (Brooks) and Wolverine World Wide, Inc. (Wolverine) alleging infringement of the three Meyers patents. *See In re Stuart R. Meyers Patent Litigation*, 721 F.Supp. 588, 589 13 USPQ2d 1488, 1489 (S.D.N.Y.1989). All of Meyers' suits were transferred to the Southern District of New York and were consolidated pursuant to 28 U.S.C. § 1407. *See Meyers v. Brooks Shoe, Inc.*, 912 F.2d 1459, 1461, 16 USPQ2d 1055, 1056 (Fed.Cir. 1990).

In their litigation, Wolverine and Brooks moved for summary judgment on the affirmative defenses of laches and estoppel, which the district court granted. This court reversed, holding, *inter alia*, that Brooks and Wolverine did not show that Meyers had unreasonably delayed in filing suit or that Meyers had engaged in any affirmative act which would support a finding of equitable estoppel. *Brooks Shoe*, 912 F.2d 1459, 16 USPQ2d 1055.

After the district court's grant of summary judgment to Wolverine and Brooks, but prior to the decision of this court, Asics, ATC, and Hyde similarly moved for summary judgment on the same defenses of laches and equitable estoppel. The district court granted summary judgment.

Although the '797, '283 and '177 patents did not issue in the same year, the district court concluded that the patents were properly treated as a group for purposes of applying the equitable defenses because (1) Meyers' action was primarily based on the first patent, (2) Meyers referred to his three patents collectively, and acknowledged the interrelationship of the patents, and (3) Meyers could have brought suit immediately on the first patent after sus-

pecting infringement and amended the complaint to include the other patents as they issued. 731 F.Supp. at 642, 17 USPQ2d at 1080. The district court held that laches barred Meyers' infringement claims because his delay in bringing suit materially prejudiced the defendants. The court stated:

> From the early 1980s, when plaintiff first became aware of defendants' allegedly infringing patents [sic, shoe designs], until 1988, when plaintiff finally brought suit, defendants had developed many more shoes incorporating the allegedly infringing design. In addition, a number of key witnesses, including designers and managers, are no longer in defendants' employ or available.

*Id.*

The district court also found that equitable estoppel barred Meyers' claims. Meyers' prolonged silence after an initial period of "aggressive advocacy" was held to amount to bad faith because such silence could only cause the alleged infringers to believe that Meyers had knowingly abandoned his claims of infringement. *Id.*

## DISCUSSION

### I.

■ The sole issue in this appeal is whether the district court properly granted summary judgment, *i.e.*, whether the district court properly concluded that there remained no genuine issues of material fact and that Asics, ATC and Hyde were entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *Jamesbury Corp. v. Litton Indus. Prods.*, 839 F.2d 1544, 1548, 5 USPQ2d 1779, 1782 (Fed.Cir. 1988). We review the district court's decision to grant summary judgment *de novo*. *National Cable Television v. American Cinema Editors, Inc.*, 937 F.2d 1572, 1576, 19 USPQ2d 1424, 1427 (Fed.Cir.1991).

■ The movant bears the burden of demonstrating that no genuine dispute exists over a material fact. *Adickes v. S.H.*

*Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Where, as here, the movant has the burden of proof on defenses raised in a summary judgment motion, the movant must show that there is no genuine issue of material fact as to every element of the defenses. *Brooks Shoe*, 912 F.2d at 1461, 16 USPQ2d at 1056. *See Celotex v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

## II. LACHES

■ To establish the defense of laches, a defendant must prove the following two factors:

(1) the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and

(2) the delay operated to the prejudice or injury of the defendant.

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1032, 22 USPQ2d 1321, 1328 (Fed.Cir.1992) (*in banc*). The laches period begins to run when the patent owner "knew or reasonably should have known of the defendant's alleged infringing activities," but the period does not begin to run until the patent issues. *Id.; Bott v. Four Star Corp.*, 807 F.2d 1567, 1575, 1 USPQ2d 1210, 1216 (Fed. Cir.1986).

■ The district court calculated the delay period for all three patents based on the issue date of the first issued patent (the '797 patent), and concluded that there was no genuine issue as to whether these delays were unreasonable. After the district court rendered its decision in this case, this court held in *Brooks Shoe*, 912 F.2d at 1462, 16 USPQ2d at 1057, that this method of calculating the delay period was erroneous. The delay was five and one half years for the '797 patent, but only four years for the '283 patent and one and one half years for the '177 patent. *Brooks Shoe* also held that it was not unreasonable for Meyers to wait until the second patent (the '283 patent) issued to sue on the first and second patent together. *Id.* Thus, for both the '797 and '283 patents, the reasonableness of Meyers' delay depends only on his activities during the four years between the date the '283 patent issued and the date Meyers filed his suits. The district court's erroneous use of a five and one half year delay period for all three patents would be sufficient in itself to require that it reexamine the question of unreasonable delay. On this record, however, we can affirmatively conclude that Meyers' delay in filing suit was not unreasonable.

■ The delay in this case was shy of the six years necessary for the presumption of laches to apply. *See Aukerman*, 960 F.2d at 1028, 22 USPQ2d at 1325. While we have affirmed findings of unreasonableness for delays of less than six years, the facts of those cases are distinguishable. *See Brooks Shoe*, 912 F.2d at 1462–63, 16 USPQ2d at 1057–58. For example, in *MCV, Inc. v. King–Seeley Thermos Co.*, 870 F.2d 1568, 1571–72, 10 USPQ2d 1287, 1290–91 (Fed.Cir.1989), the plaintiff waited four years to bring a claim for co-inventorship and co-ownership after expressly assenting to not being named co-inventor. Similarly, in *Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1550, 221 USPQ 1, 10 (Fed.Cir.1984), the plaintiff waited three years before amending its infringement complaint to name an additional product after it had notice of that product.

Meyers did not take an express position and then attempt to alter that position at a later time. Meyers did not expressly threaten litigation and then delay bringing suit for several years. Meyers offered evidence of reasons (negotiating with his attorney, negotiating with other parties for licenses) for his delay. Under these facts, the district court's conclusion that Meyers' delay was unreasonable is erroneous.

The defendants argue that they suffered economic prejudice and two kinds of evidentiary prejudice (loss of key witnesses and loss of documentary evidence). We are unpersuaded, however, that defendants have established that they were prejudiced by the delay.

■ Asics, ATC and Hyde all assert that since Meyers' initial contacts with them, they have spent substantial amounts of money to design, develop and promote many new and different shoe models that Meyers now alleges infringe his patents. There is no dispute that defendants have suffered an economic detriment, the question is whether this prejudice *resulted from* Meyers' delay.[1]

None of the defendants submitted evidence that they curtailed design and development of shoes in response to Meyers' suit once it was actually filed. Moreover, the sales data submitted by the defendants to support their assertion of prejudice are not conclusive. Sales of the various models were somewhat erratic, and do not show any clear trend. Finally, the evidence shows that none of the defendants was concerned that its products might infringe Meyers' patents, and does not show that any of the defendants would have acted differently had Meyers sued earlier.

Defendants also argue that they suffered evidentiary prejudice—loss of key witnesses and loss of documentary evidence. However, none of the defendants state exactly what particular prejudice it suffered from the absence of these witnesses or evidence. Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient.

For the reasons set forth, we reverse the district court's grant of summary judgment on laches.

### III. EQUITABLE ESTOPPEL

In *Aukerman*, this court overruled the four-part test for estoppel set out in

*Jamesbury*, 839 F.2d at 1548, 5 USPQ2d at 1782, and applied by the district court in this case. To establish equitable estoppel under *Aukerman*, a defendant must show:

(a) the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer. "Conduct" may include specific statements, action, inaction, or silence where there was an obligation to speak.

(b) the alleged infringer relies on that conduct.

(c) due to its reliance, the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim.

*Aukerman*, 960 F.2d at 1028, 22 USPQ2d at 1325.

■ To establish the first element of equitable estoppel, the defendants must show that Meyers' statements and conduct "supported an inference that [Meyers] did not intend to press an infringement claim against" the defendants. *Id.* at 1042, 22 USPQ2d at 1336. The fact that Meyers' attempts to negotiate licenses were followed by a period of silence does not, in itself, constitute the necessary misleading conduct. As this court stated in *Brooks Shoe:*

[W]e do not believe that a suggestion of infringement coupled with an offer to license followed by silence would suffice to establish equitable estoppel. "Silence alone is not sufficient affirmative conduct to give rise to estoppel." [*Hottel Corp. v. Seaman Corp.*, 833 F.2d 1570,

1. Defendants assert that Meyers is incorrect in arguing that they must show reliance upon Meyers' delay in order to prove laches. We agree with defendants. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1042, 22 USPQ2d 1321, 1336 (Fed.Cir.1992) (*in banc*). However, laches does require that prejudice results from the delay. As stated in *Aukerman*, there is a difference between prejudice that *results from* delay and prejudice that is due to *reliance upon* delay.

An infringer can build a plant entirely unaware of the patent. As a result of infringement, the infringer may be unable to use the facility. Although harmed, the infringer could not show reliance on the patentee's conduct. To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with building the plant. *Id.* at 1043, 22 USPQ2d at 1336–37. In this case, defendants need not show that they relied on Meyers' delay to establish laches. However, they must show that the prejudice they suffered resulted from the delay.

1573, 4 USPQ2d 1939, 1941 (Fed.Cir. 1987) ]....

....

... "In the cases that have applied intentionally misleading silence in the patent infringement context, a patentee threatened immediate or vigorous enforcement of its patent right but then did nothing for an unreasonably long time." [*Id.* at 1574, 4 USPQ2d at 1941.] 912 F.2d at 1464, 16 USPQ2d at 1059. The defendants have not shown that Meyers threatened immediate and vigorous enforcement of his patents and then by silence lulled them into the belief that he did not intend to enforce his patents.

For Asics, there is no basis for applying equitable estoppel on summary judgment, because Meyers did not have any contact with Asics prior to filing suit. Similarly, because Meyers did not contact Hyde after the '283 or '177 patents issued, Meyers could not have communicated acquiescence, or threatened litigation with respect to Hyde's alleged infringement of these patents.

As to the '797 patent, Hyde points to a November 9, 1983 letter as evidence of the first element of estoppel. The letter, which memorializes a telephone conversation between Meyers and a vice president of the Saucony division of Hyde, states:

I should be obliged if you would let me know promptly if you are prepared to enter into negotiations with a view to obtaining licenses on mutually acceptable terms....

I propose that a preliminary meeting should be arranged as soon as possible so that I can furnish you with any further information you may require....

This letter is merely an invitation to enter into a business relationship; it neither threatens litigation nor conveys the impression that Meyers would acquiesce in Hyde's alleged infringement.

ATC, for the first element of estoppel, points to an August 1983 telephone conversation between Meyers and the secretary to ATC's president. The secretary summarized Meyers' telephone call in a memorandum to the president:

Today, I received a phone call from Dr. Stewart Meyer [sic] at 9:00 a.m., in reference to his patent ⊕ 4297797.... Dr. Meyer [sic] would like to have a meeting with you concerning this patent.

Meyers' notes, however, state that he told the secretary that "many of the shoes she had on the market infringed [his] patent rights." Neither the secretary nor Meyers indicated that any threats of litigation were made in the telephone call. Moreover, the record shows that Meyers' initial communications with ATC were not followed by silence. Instead, several letters passed between Meyers and ATC between November 1983 and January 1985. These calls and letters do not rise to the level of a threat of litigation which would make a subsequent period of silence misleading.

Defendants make numerous conclusory assertions that they relied on Meyers conduct, but they have not presented undisputed facts to show that they did. To the contrary, the evidence suggests that the defendants ignored or gave little weight to Meyers' efforts to negotiate licenses. Furthermore, defendants have not shown that they would have altered their conduct if Meyers had sued earlier.

We conclude that the district court's grant of summary judgment on the basis of laches and estoppel must be reversed, and the case is remanded.

REVERSED and REMANDED.