**BEAM LASER SYSTEMS, INC., Plaintiff,**

v.

**COX COMMUNICATIONS, INC., CableRep, Inc., CoxCom, Inc., and SeaChange International, Inc., Defendants.**

**No. 2:00CV195.**

United States District Court, E.D. Virginia, Norfolk Division.

April 20, 2001.

Raymond Henry Joseph Powell, Jr., Steven Eugene Adkins, Adduci, Mastriani & Schaumberg, LLP, Washington, DC, Louis S. Mastriani, Alfred M. Haas, Maureen F. Browne, Adduci, Mastriani & Schaumberg, L.L.P., Washington, DC, Megan Elizabeth Jones, Adduci, Mastriani & Schaumberg, LLP, Washington, DC, Robert A. Westerlund, Westerlund & Powell PC, Alexan-

dria, VA, for Beam Laser Systems, Inc., Frank L. Beam.

Walter Dekalb Kelley, Jr., Troutman Sanders Mays & Valentine, LLP, Norfolk, VA, Frank Alwin Edgar, Jr., Willcox & Savage, P.C., Norfolk, VA, Steven M. Bauer, Eva M. Marceau, Testa, Hurwitz & Thibeault, LLP, Boston, MA, John J. Cotter, Kurt William Lockwood, Testa, Hurwitz & Thibeault, Boston, MA, Christina Nicole Smith, Indranil Mukerji, Amy Marie McCallen, Testa, Hurwitz & Thibeault, Boston, MA, for SeaChange International, Inc.

Walter Dekalb Kelley, Jr., Troutman Sanders Mays & Valentine, LLP, Norfolk, VA, Lars Calvin Golumbic, Dow, Lohnes & Albertson, Washington, DC, Frank Alwin Edgar, Jr., Willcox & Savage, P.C., Norfolk, VA, Stephen Edward Noona, Kaufman & Canoles, PC, Norfolk, VA, David E. Mills, Dow, Lohnes & Albertson, PLLC, Washington, DC, Robert Noah Feldman, John J. Cotter, Kurt William Lockwood, Testa, Hurwitz & Thibeault, Boston, MA, Christina Nicole Smith, Indranil Mukerji, Amy Marie McCallen, Testa, Hurwitz & Thibeault, Boston, MA, for Cox Communications, Inc.

Walter Dekalb Kelley, Jr., Troutman Sanders Mays & Valentine, LLP, Norfolk, VA, Frank Alwin Edgar, Jr., Willcox & Savage, P.C., Norfolk, VA, Robert Noah Feldman, John J. Cotter, Kurt William Lockwood, Testa, Hurwitz & Thibeault, Boston, MA, Christina Nicole Smith, Indranil Mukerji, Amy Marie McCallen, Testa, Hurwitz & Thibeault, Boston, MA, for Louis Stinson, Jr., CableRep, Inc., CoxCom, Inc.

## MEMORANDUM OPINION AND ORDER

REBECCA BEACH SMITH, District Judge.

This matter came before the court on March 13, 2001, for a hearing on the proper construction of certain patent claims, *see Markman v. Westview Instruments, Inc.,* 52 F.3d 967 (Fed.Cir.1995) (in banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), and for a hearing on the following pending motions: (1) Beam Laser Systems, Inc. ("Beam Laser") objected to the ruling by a magistrate judge denying its motion to amend its answer to the complaint filed by SeaChange International, Inc. ("SeaChange"), an intervenor in this action; (2) Cox Communications, Inc. ("CCI"), CoxCom, Inc., and CableRep, Inc. (collectively, "the Cox Companies" or the "Cox Defendants"), filed a Motion for Summary Judgment of Laches Barring Damages Prior to Filing Suit (the "Laches Motion"); (3) SeaChange and the Cox Companies (collectively, "Defendants") filed a Motion for Summary Judgment of Inequitable Conduct Barring Enforcement of U.S.Patent No. 4,814,883 and U.S.Patent No. 5,200,825 (the "Inequitable Conduct Motion"); (4) SeaChange filed a Motion for Summary Judgment of Non–Infringement for Lacking a "Local Video Signal"; (5) Defendants filed a Motion for Summary Judgment of Non–Infringement of U.S.Patent No. 4,814,883 and U.S.Patent No. 5,200,825 With Respect to the Cox Companies' Hampton Roads–Type Facilities; (6) Defendants filed a Motion for Summary Judgment of Invalidity of U.S.Patent No. 5,200,825 (the "Invalidity Motion"); (7) Beam Laser filed two Motions for Relief pursuant to Federal Rule of Civil Procedure 56(f); and (8) Beam Laser filed a Motion for Leave to File a Sur–Reply.

For the reasons stated from the bench, the two motions for relief pursuant to Rule 56(f), and the motion for leave to file a surreply were all **DENIED,** and Beam Laser's motion for leave to amend its answer was **GRANTED.** For the reasons given below, the Laches Motion is **DENIED.**

The claim construction and remaining motions for summary judgment are still pending before the court for decision.

## I. Background and Procedural History

On March 17, 2000, Beam Laser and Frank L. Beam ("Beam"), Beam Laser's president and sole shareholder,[1] filed this action against CCI, alleging that CCI was infringing U.S.Patent No. 4,814,883 ("the '883 patent"), entitled "Multiple Input/Output Video Switch for Commercial Insertion System," and U.S.Patent No. 5,200,825 ("the '825 patent"), entitled "Commercial Insertion System Remotely Controlling Multiple Video Switches," (collectively, "the Beam patents"). Plaintiffs sought to enjoin CCI from infringing the patents and to recover monetary damages for previous infringements.

An application for the '883 patent was filed on January 4, 1988, and the patent issued on March 21, 1989. The technology was invented by Michael C. Perine and Eric Softley, but the patent was assigned to Beam Laser. An application for the '825 patent was filed on July 1, 1992, and the patent issued on April 6, 1993. This technology was invented by Perine, but the patent was assigned to Beam Laser.

On May 16, 2000, SeaChange, which manufactures and sells advanced digital video equipment for the broadcast industry, and, in particular, manufactured equipment used by a CCI subsidiary, brought a declaratory judgment action in the United States District Court for the District of Massachusetts, seeking, *inter alia*, a declaration that the Beam patents were invalid and/or not infringed by SeaChange or its customers, including CCI.

On May 19, 2000, SeaChange filed a motion with this court to intervene in the action brought here by Plaintiffs, and to transfer venue to the District of Massachusetts. On June 16, 2000, Plaintiffs amended their complaint to add CoxCom and CableRep—subsidiaries of CCI—as defendants. SeaChange's motion to intervene was granted on June 22, 2000. On June 23, 2000, SeaChange filed a complaint against Plaintiffs in this action, seeking declaratory judgments of non-infringement, invalidity, and unenforceability of the Beam patents, as well as tortious interference with advantageous relations based on Plaintiffs' filing of this action. On July 10, 2000, SeaChange filed a notice of voluntary dismissal of its action in the District of Massachusetts. This court denied Defendants' motion to transfer venue on October 23, 2000.[2]

Beam Laser moved for leave to file an amended answer on December 1, 2000. In its proposed amended answer, Beam Laser sought to add compulsory counterclaims against SeaChange. A Magistrate Judge, after hearing arguments on the motion, denied it.

On January 23, 2001, the Cox Defendants filed the Laches Motion, and on January 31, 2001, Defendants filed the Inequitable Conduct Motion. On February 2, 2001, SeaChange filed its Motion for Summary Judgment of Non–Infringement for Lacking a "Local Video Signal." Also on February 2, 2001, Defendants filed their Motion for Summary Judgment of Non–Infringement of U.S.Patent No. 4,814,883 and U.S.Patent No. 5,200,825 With Respect to the Cox Companies' Hampton Roads–Type Facilities. Beam Laser filed objections to the Magistrate

---

1. By order filed October 23, 2000, Frank L. Beam was dismissed from the action for lack of standing.

2. The Cox Companies formally joined the motion to transfer venue by filing a motion to that effect on August 8, 2000.

Judge's ruling on its motion to amend on February 5, 2001. On February 9, 2001, Defendants filed the Invalidity Motion. On February 12, 2001, Beam Laser filed a Motion for Relief Under Rule 56(f); this motion pertains to the Motion for Summary Judgment of Non–Infringement for Lacking a "Local Video Signal," and the Motion for Summary Judgment of Non–Infringement of U.S.Patent No. 4,814,883 and U.S.Patent No. 5,200,825 With Respect to the Cox Companies' Hampton Roads–Type Facilities. On February 27, 2001, Beam Laser filed a second Motion for Relief Under Rule 56(f); this motion pertains to the Invalidity Motion. On March 8, 2001, Beam Laser filed a Motion for Leave to File a Sur–Reply to "Reply" in Support of Motion for Summary Judgment of Invalidity of U.S.Patent No. 5,200,825.

## II. Analysis

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 824 (Fed.Cir.1999). "Where ... the movant has the burden of proof on defenses raised in a summary judgment motion, the movant must show that there is no genuine issue of material fact as to every element of the defenses." *Meyers v. Asics Corp.*, 974 F.2d 1304, 1307 (Fed.Cir.1992).

■■■ Laches has been recognized as an equitable defense in a patent infringement action. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1028 (Fed.Cir.1992) (in banc). Where the doctrine is applicable, it operates as a bar to damages prior to suit. *See id.* The defense of laches consists of two elements: (1) "the patentee's delay in bringing suit was unreasonable and inexcusable;" and

(2) "the alleged infringer suffered material prejudice attributable to the delay." *Id.*

The period of delay "is measured from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities to the date of suit." *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1464 (Fed.Cir.1998). "Absent actual knowledge, the facts must support a duty of inquiry." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.*, 988 F.2d 1157, 1162 (Fed.Cir.1993).

■■■ The Federal Circuit has explained that, because the delay period may begin with the patentee's constructive knowledge of infringement, patentees have a duty to police their rights. *See Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1337 (Fed.Cir. 1998). "[T]he law is well settled that where the question of laches is in issue the plaintiff is chargeable with such knowledge as he might have obtained upon inquiry, provided the facts already known by him were such as to put upon a man of ordinary intelligence the duty of inquiry." *Id.* at 1338 (internal quotation marks omitted) (alteration in original). Thus, the plaintiff "must be diligent and make such inquiry and investigation as the circumstances reasonably suggest, and the means of knowledge are generally equivalent to actual knowledge." *Id.* (internal quotation marks omitted).

As examples of the circumstances and means of knowledge that might justify an imputation of knowledge, the Federal Circuit has listed "sales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention, or published descriptions of the defendant's potentially infringing activities." *Id.* A patentee need not have actual knowledge of such conspicuous activities of potential infringement in order to justify the imputation of knowledge, if

these activities "are sufficiently prevalent in the inventor's field of endeavor." *Id.*

■ When a patentee delays bringing suit for more than six years after the date he knew or should have known of the allegedly infringing activity, a presumption of laches arises. *See Aukerman,* 960 F.2d at 1028. Once triggered, the presumption has the effect of shifting to the patentee the burden of going forward with evidence that the delay was justified or there was no prejudice to the alleged infringer, but the burden of persuasion does not shift. *See id.*

### The Laches Presumption

In this case, the key date for the purposes of triggering the presumption of laches is March 17, 1994. The Cox Companies assert that Beam Laser, through its president, Frank Beam, knew at least since 1992 of the fact that the Cox Companies were performing ad insertion, using ad insertion equipment manufactured primarily by Channelmatic and Texscan. In support of their assertions, the Cox Companies proffer the following evidence. Beam testified at his deposition that he "knew" both Channelmatic and Texscan equipment infringed the patents from the date they were issued. Furthermore, the Cox Companies argue that, through his attendance at trade shows, his review of trade and product literature, and his participation on an industry panel charged with reviewing existing equipment and establishing industry standards, Beam would have learned of Cox's allegedly infringing activities using these products. Moreover, Beam met personally with Patrick Esser, a vice president of CableRep, to demonstrate Beam Laser's equipment; Esser and Beam discussed ad insertion technology, and the Cox Companies assert that Esser and Beam must have discussed CableRep's ad insertion needs. Thus, the Cox Companies argue, Beam must have known that they were using Channelmatic and Texscan equipment, and Beam therefore knew of the Cox Companies' allegedly infringing activities.

Beam Laser has not denied that Beam suspected that the Cox Companies were infringing the patents by their use of Channelmatic and Texscan equipment. Rather, Beam Laser argues that Beam's mere suspicion of infringement was insufficient to start the "laches clock" running. Beam Laser argues that Beam could not have known whether the Cox Companies, or the equipment they used, were infringing the patents, because he lacked the technical qualifications necessary to make such a determination, and the information necessary for such a determination was not publicly available, nor was it made available to Beam by virtue of his service on the industry panel. Moreover, Beam Laser observes, Beam's suspicions proved to be incorrect, as Beam Laser now has learned through discovery that the Channelmatic and Texscan equipment does not infringe the patents after all. Beam Laser now asserts that it is SeaChange's equipment, and the Cox Defendants' use thereof, that infringes the patents, and Beam did not know about the SeaChange equipment until 1999.

■ The Cox Companies argue in reply that the fact that the Channelmatic and Texscan equipment did not infringe the patents is irrelevant to the determination of when the laches clock began to run. The court disagrees. Laches cannot apply in a situation where infringement is a factual impossibility, as with the Channelmatic and Texscan equipment. The laches defense, although stated in terms of "allegedly" infringing activities, is predicated on the supposition that infringement did, in fact, take place. Its purpose is to protect a (presumedly liable) defendant from dam-

ages that may have accrued while the plaintiff slept on its rights.[3] The term "alleged" is used to indicate that the defense is asserted before a determination of liability has been made.

■ In this case, despite some of his deposition testimony to the contrary, Beam could not have had actual knowledge of Cox's infringement using Channelmatic and Texscan equipment, because this equipment did not infringe the patents.[4] The court agrees with the Cox Companies, however, that Beam's strongly held belief that the Cox Companies were infringing his patents gave rise to a duty to investigate. The Federal Circuit has stated that a plaintiff "is chargeable with such knowledge as he might have obtained upon inquiry." *General Elec.*, 148 F.3d at 1338 (internal quotation marks omitted). Had Beam investigated his suspicions while the Cox Companies were using Channelmatic and Texscan equipment, presumably, he would have learned that his beliefs were unfounded.[5] It was not until the Cox Companies began using SeaChange equip-

ment, sometime in 1994, that Beam could have obtained knowledge of the alleged infringement, had he investigated.[6] Hence, the earliest date of the start of the delay period is the date on which the Cox Companies began using SeaChange equipment.

Beam Laser argues that charging Beam with a duty to investigate infringement would be unreasonable because Beam did not have access to the information necessary to determine that the Cox Companies were infringing his patents, nor was he qualified to evaluate such information. However, in response to the Cox Companies' question regarding what Beam finally learned in 2000, when he brought suit, that he could not have learned earlier, Beam Laser responded: "Only when Mr. Beam was able to obtain the services of technical experts and, through discovery, obtain non-public, technical information, was he able to know with any certainty that Cox was infringing the asserted patents." *Pl. Beam Laser Systems, Inc.'s Mem. in*

---

3. The laches defense is not intended to punish a plaintiff who sleeps on its rights, but to protect a defendant from the consequences thereof. *See Aukerman*, 960 F.2d at 1029 (discussing rationale behind laches defense); *Odetics, Inc. v. Storage Technology Corp.*, 919 F.Supp. 911, 917 (E.D.Va.1996) (noting that "the mere passage of time does not, by itself, warrant application of the doctrine"), *vacated on other grounds*, 116 F.3d 1497, 1997 WL 357598 (Fed.Cir.1997).

4. The Cox Companies suggest that Beam Laser now admits that the Channelmatic and Texscan equipment did not infringe the Beam patent solely as a litigation strategy. Be that as it may, the court accepts the unrefuted representations that are made to it, and thus, the court accepts the position of both parties, that Cox was not infringing the patents when it used Channelmatic and Texscan equipment to perform ad insertion.

5. Had Beam engaged in such an investigation, it would not necessarily have relieved

him of a continuing duty to investigate. *See General Elec.*, 148 F.3d at 1339.

6. The Cox Companies argue that the laches period should begin before they began to use SeaChange equipment, because Beam believed equipment manufacture by Digital Equipment Corporation ("DEC"), Sea-Change's predecessor, infringed the '883 patent, and SeaChange's product is based on DEC's products. In support of this argument, they cite *Odetics, Inc. v. Storage Technology Corp.*, 919 F.Supp. 911 (E.D.Va.1996), *vacated on other grounds*, 116 F.3d 1497, 1997 WL 357598 (Fed.Cir.1997). In the Odetics case, however, the court had found that several pieces of equipment were "essentially identical." *919 F.Supp. at 916 n. 3.* There is no evidence before this court that would allow it to compare the DEC products to the Sea-Change product, much less provide a basis for finding that the products are essentially identical.

*Supp. of Its Opp'n to the Cox Companies' Mot. for Summ.J. Regarding Laches,* at 20. Nothing in this statement explains why Beam could not have brought the suit in 1994. In a footnote, Beam Laser asserted that it had complied with its Rule 11 obligations because "Mr. Beam and his counsel and consulting experts conducted a diligent prefiling examination of the patents and accused products sufficient to give them a good faith basis for bringing this action." *Id.* at 20 n. 12. Again, this does not explain why Beam did not hire patent counsel and consulting experts to conduct a prefiling examination of the patents and accused products in 1994.

Moreover, Beam's deposition testimony makes clear that he deliberately chose not to investigate the infringement that he believed was taking place, because he did not believe an infringement suit would be sufficiently lucrative. Beam's testimony, in relevant part, is as follows:

Q. What caused you in 1998 to start looking for a patent counsel to pursue those patent rights?

A. I felt that the industry had grown to a significant size. I knew that they were infringing on my patents in order to execute regional and local sales, and I knew that there was enough money involved in it to attract a high quality law firm to help me prosecute the patent rights.

Q. You had believed all along that your patent was being infringed?

A. Yes, sir.

. . . .

Q. Even though you believed that from 1989 you never pursued it until 1998 because you didn't think there was enough money in it to interest a law firm?

A. That's correct.

Q. Did something happen in 1998 that made you then realize that maybe it was something that could interest a law firm to take?

A. Well, I constantly monitor the trades, and I had seen the market grow, and I saw that the regional and local advertising that was being done was starting to become a significant revenue source in the industry where before that it was primarily stuff that was coming off the cable networks.

Q. So were you really just waiting for it to grow to a certain size to take advantage of that size for going after them ... through 1989 through 1998?

A. Yes.

Q. Had you tried to retain counsel before 1998 to—

A. No.

Q. Never?

A. No.

Q. Had you charged anyone with infringements before 1998?

A. I think Bob Kain, who filed the patents, wrote a couple of letters to people back in [the] early 1990s.

Q. Had you asked him to do that?

A. Yes.

Q. And why did you not pursue those companies that Mr. Kain wrote to in the early 1990s?

A. I think it became very evident to me although Bob Kain is a very capable patent attorney, he is certainly not somebody who's going to be able to follow a litigator's course.

*Beam Dep.* (Dec. 14, 2000), at 131, 133–35 (objections omitted). Clearly, Beam believed his patents were being infringed, but decided not to pursue it for financial reasons. This is exactly the situation

against which laches is designed to protect. Once Beam determined that it would be worth his while to pursue his case, he hired patent counsel and technical experts to investigate his beliefs of infringement.

The court concludes that the delay period attributable to Beam began in 1994, when the Cox Companies began using Sea-Change equipment. Beam's suspicions gave rise to a duty to investigate, and Beam Laser has raised no issue of disputed fact regarding what he learned in 2000 that he could not have learned in 1994, had he embarked on the investigation he pursued prior to bringing this suit. Because the Cox Companies have not proffered evidence of the precise date on which they began using SeaChange equipment, the court cannot conclude that the delay period began as early as March 17, 1994. Therefore, the laches presumption does not apply here.

Because the laches presumption does not apply here, the Cox Companies retain both the burdens of production and persuasion to prove that the delay was unreasonable and that the delay caused prejudice. *See Aukerman*, 960 F.2d at 1038.

### Undue Delay

■ The evidence is clear that the primary reason for Beam Laser's delay in filing suit was Beam's desire to wait until there was enough at stake to justify the costs of litigation and to interest highly qualified counsel. This is not a justifiable excuse. *See Hall v. Aqua Queen Mfg.*, 93 F.3d 1548, 1554 (Fed.Cir.1996) ("A patentee's inability to find willing counsel ... is widely rejected as a legally cognizable reason to excuse an unreasonable delay in filing suit."); *Wafer Shave, Inc. v. Gillette Co.*, 857 F.Supp. 112, 128 (D.Mass.1993) ("Courts have consistently and correctly held ... that delays for lack of funds to hire an attorney, or to search for an attorney, are not excused for the purpose of

determining laches."), *aff'd*, 26 F.3d 140, 1994 WL 191957 (Fed.Cir.1994).

Additionally, the record contains evidence that Beam did not want to accuse cable operators of infringement because he was hoping to sell his products to them. When asked during his deposition why he never told Cox that he believed they were using equipment that infringed his patents, Beam replied, "Because that was not what I was into doing." *Beam Dep.* (Jan. 10, 2001), at 296–97. The Federal Circuit has identified negotiations with an accused infringer as a justifiable excuse for delay. *See Aukerman*, 960 F.2d at 1033. The evidence here, however, shows only that Beam and representatives of Cox discussed Beam Laser's equipment in the early 1990s. *See* Beam Decl. ¶¶ 3–6. There is no evidence that Beam Laser and Cox communicated again before 1999. *See id.* ¶ 10. The hopes of one day negotiating a deal with a suspected infringer is not a sufficient justification for delaying suit.

The Cox Companies have met their burden of proffering evidence that the delay was unjustified, and Beam Laser has failed to raise an issue of fact with respect to this issue. Moreover, the delay here was significant, falling just short of the six years required to trigger the presumption of laches.

### Prejudice

■ Prejudice may be either evidentiary or economic. *See Aukerman*, 960 F.2d at 1033. But the prejudice must have been caused by the delay. "By definition, actions undertaken before the delay period, however prejudicial, may not figure at all in the analysis." *Hall*, 93 F.3d at 1557.

The Cox Companies assert that, as a result of Beam Laser's delay in bringing suit, they suffered both evidentiary and economic harm. Concerning evidentiary harm, the Cox Companies first claim that

they have been prejudiced by the destruction of Beam Laser's corporate documents. Beam testified at his deposition that he made the decision to destroy these documents "in the mid–90s." *Beam Dep.* (Dec. 14, 2000), at 34. This assertion, standing alone, is insufficient to establish prejudicial action occurring after the delay period began.

However, the Cox Companies further assert that they have been prejudiced by the death of Michael Perine, in 1995, because "Mr. Perine had unique knowledge of the circumstances of the development of the '883 and '825 patents, and the preparation and prosecution of the patents." *Mem. in Supp. of the Cox Companies' Mot. for Summ.J. of Laches Barring Damages Prior to Filing Suit,* at 6. In particular, only Perine would know with which prior art he was familiar at the time the patents were prosecuted. Beam Laser does not dispute this fact.[7]

The Cox Companies claim that they have been prejudiced by the fading memories of key witnesses, including Beam, Robert Kain, who was Beam Laser's patent attorney, and Eric Softley, who was a named inventor of the '883 patent. To support this allegation, the Cox Companies cite to one exchange in Beam's deposition testimony, in which Beam stated that he was unable to remember certain details regarding the installation of equipment in 1986. It cannot be determined whether Beam's recollection of that event dimmed prior to the start of the delay period in 1994. Although the Cox Companies make general statements that the memories of Kain and Softley have faded, they cite no record evidence in support.[8] Therefore, there is insufficient evidence to show that the memories of key witnesses have faded as a result of Beam's delay in filing suit. *See Meyers,* 974 F.2d at 1308 ("Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary evidence, are not sufficient.").

As a final allegation of evidentiary prejudice, the Cox Companies claim that third parties have lost track of documents and witnesses. In support of this contention, the Cox Companies proffer the letter sent by Adelphia Cable in response to a subpoena *duces tecum,* in which Adelphia Cable explained that it was unable to locate any

---

7. In its briefing, Beam Laser argued that the evidence of Mr. Perine's death was inadmissible because it had not been authenticated. Beam Laser conceded at the hearing, however, that Mr. Perine is, in fact, dead, and there does not seem to be any dispute regarding the date of his death.

8. The Cox Companies state in their reply brief that "Beam Laser does not dispute that memories of key witnesses such as Kain and Softley have faded." *The Cox Companies' Reply in Supp. of Their Mot. for Summ.J. of Laches Barring Damages Prior to Filing Suit,* at 10. The Cox Companies have the burdens of production and persuasion on prejudice, since the laches presumption does not apply here. Given that the Cox Companies mentioned, and cited evidence in support of, only Beam's memory loss in their supporting brief, the court will not hold it against Beam Laser that it did not dispute the alleged memory losses of Kain and Softley. Although the court appreciates the Cox Companies' concerns in not wishing to "clutter the brief ... with dozens of citations to the transcript where Beam answered 'I don't remember,'" *id.,* the court would rather review record evidence with the assistance of the citations in a "cluttered brief" than have to, itself, search a voluminous evidentiary record for support of the Cox Companies' factual allegations. It is the Cox Companies' burden on summary judgment to cite record evidence in support of its factual contentions. This putative fact—that the memories of key witnesses have faded—is material; the court intends to hold an evidentiary hearing at a later date, and the Cox Companies may wish to present evidence regarding this factual contention at that hearing.

documents responsive to the subpoena because the file was purged "several years ago in the course of a routine purge." Ex. K, *Mem. in Supp. of the Cox Companies' Mot. for Summ.J. of Laches Barring Damages Prior to Filing Suit.* Although the inability to obtain the requested documents is prejudicial, this evidence does not establish that the action occurred after the delay period began.[9]

The Cox Companies allege economic harm on the basis of large investments made by the Cox Companies in SeaChange equipment. If Beam Laser had brought suit earlier, the Cox Companies assert, they could have altered their technology to avoid Beam's allegations. The Cox Companies' allegation would support a finding of prejudice, if properly supported. *See, e.g., Wafer Shave,* 857 F.Supp. at 125. However, Beam Laser has objected to the evidence upon which the Cox Companies rely, on the ground that it is incompetent in support of a summary judgment motion. The court agrees. The only support that the Cox Companies provide for this allegation of economic prejudice is the declaration of R. James Kelso. Kelso declared that the information he provided was based on "personal knowledge, information, and belief," without specifying which facts were within his personal knowledge.

*Kelso Decl.* (Jan. 22, 2001) ¶ 1.[10] Because the court does not know whether Kelso's statement regarding Cox's expenditures on SeaChange equipment was based on personal knowledge, the court may not consider this evidence for summary judgment purposes. *See* FedR.Civ.P. 56(e).

In summary, the court finds the evidence of evidentiary and economic prejudice insufficient at this juncture to support a finding on summary judgment. Accordingly, this motion for summary judgment of laches is **DENIED**.

The Cox Companies have requested, in the event the court denies their Laches Motion, that an evidentiary hearing be held prior to trial. The court intends to hold such a hearing, at which it will determine the facts regarding prejudice.[11]

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for all parties.

IT IS SO **ORDERED**.

---

9. Additionally, the Cox Companies stated that "while Beam claims to have installed multiple units covered by [the] '883 and/or '825 patents around the country, the Cox Companies have been unable to locate a *single* technical document to corroborate these installations." *Mem. in Supp. of the Cox Companies' Mot. for Summ.J. of Laches Barring Damages Prior to Filing Suit,* at 16. Although this statement shows prejudice, it does not establish that the action occurred after the delay period began.

10. The court did not find a Kelso declaration appended to, or submitted with, any of the Cox Companies' briefings on the Laches Motion. The court did find a Kelso declaration appended to *Defendants' Memorandum in Support of Its Opposition to Plaintiffs' Motion to Extend Discovery and to Extend the Disclosure of Expert Witness Opinions,* and it is this declaration which the court has considered.

11. The facts upon which the court has found a lack of justification for the delay are not in dispute, and the court will not receive any further evidence in this regard. After taking evidence on prejudice, the court will exercise its discretion to determine whether the laches defense should be granted. The court notes that there do not appear to be "other factors which would make it inequitable to recognize the defense," if prejudice is shown. *Aukerman,* 960 F.2d at 1036.