RADER, Circuit Judge,
dissenting.
Because this court with this opinion expands the doctrine of equitable estoppel beyond its own precedent, I must respectfully dissent.
“Silence alone will not create an estoppel unless there was a clear duty to speak or somehow the patentee’s continued silence reinforces the defendant’s inference from the plaintiffs known acquiescence that the defendant will be unmolested.... [0]n summary judgment, such inference must be the only possible inference from the evidence.” A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1043-44 (Fed.Cir.1992) (en banc) (internal citations omitted) (emphasis in original). In Aukerman, this court held that because the district court could draw different inferences from the correspondence between the parties, the district court clearly and impermissibly drew an unfavorable inference against the patentee in granting summary judgment. Id.; see also Hemstreet v. Computer Entry Sys. Corp., 972 F.2d *1317 1290, 1295 (Fed.Cir.1992) (holding that “mere silence must be accompanied by some other factor which indicates that the silence was sufficiently misleading as to amount to bad faith” (emphasis in original)). The patentee’s silence “must be combined with other facts respecting the relationship or contacts between the parties to give rise to the necessary inference that the claim against the defendant is abandoned.” Aukerman, 960 F.2d at 1042. This court held that even an invitation to sue made by the defendant did not create a clear duty to speak for the patentee. See id. at 1026-27.
In this case, Aspex sent Clariti a letter that does not create the clear duty required by Aukerman. Notably absent is a threat of “immediate and vigorous enforcement of its patent rights.” Hottel Corp. v. Seaman Corp., 833 F.2d 1570, 1574 (Fed. Cir.1987) (holding that “[i]n the cases that have applied intentionally misleading silence in the patent infringement context, a patentee threatened immediate and vigorous enforcement of its patent right but then did nothing for an unreasonably long time”). The letter merely informs Clariti of the patents, points to Aspex’s patent enforcement policy, and requests additional information from Clariti to permit Aspex to evaluate its position. Aspex made no outright “threats of litigation.” Meyers v. Asics Corp., 974 F.2d 1304, 1309 (Fed.Cir.1992); see also Hemstreet, 972 F.2d at 1292 (finding a genuine issue of fact as to whether patentee engaged in misleading conduct because “[t]he letter did not threaten immediate litigation, nor did it provide any deadline for response”). Also, Aspex did not accuse specific Clariti products. See Aukerman, 960 F.2d at 1042 (“In the most common situation, the patentee specifically objects to the activities currently asserted as infringement in the suit .... ” (emphasis added)); see also Meyers, 974 F.2d at 1305 (finding no misleading conduct even where patentee sent letter to defendant asserting that several of defendant’s product models infringed its patents).
Licensing negotiations in which a patentee asserts infringement do not create estoppel. See, e.g., Meyers, 974 F.2d at 1308-09 (holding that “a suggestion of infringement coupled with an offer to license followed by silence [does not] suffice to establish equitable estoppel”). An “invitation to enter into a business relationship [that] neither threatens litigation nor conveys the impression that the [patentee] would acquiesce in [the defendant’s] alleged infringement” does not create a clear duty to speak. Id. at 1309. In this case, one could find that the letters from Aspex were simply requests for more information to facilitate an informed decision amongst the options of licensing, litigation, or abandonment of the infringement claim. In a case with little evidence beyond the actual letters sent by the parties, the district court should avoid premature conclusions that leap to the drastic punishment of barring all relief.
This court does not justify its conclusion that Aspex explicitly abandoned its infringement claim with respect to the '747 patent. After all, Aspex did not even mention the patent in its May 12, 2003 letter. Moreover, Clariti did not give Aspex the information repeatedly requested in Aspex’s March 7, March 10, and May 12, 2003 letters. Thus, Aspex did not even have the information it requested to make an informed decision about a patent infringement claim on the '747 patent. In each of its earlier three letters, Aspex stated that after it received the information from Clariti, it would “then be in a position to reach a prompt and reasonable resolution of this situation.” This statement put Clariti on notice that Aspex would not even consider filing suit until it *1318 received the information, and therefore the ensuing silence was not misleading.
This court mistakenly relies on Scholle Corp. v. Blackhawk Molding Co., 133 F.3d 1469 (Fed.Cir.1998) and Wafer Shave, Inc. v. The Gillette Co., 857 F.Supp. 112 (D.Mass.1993), aff'd, 26 F.3d 140 (Fed.Cir. 1994) to establish misleading conduct. In Scholle, the accused infringer made a design-around product during litigation in an effort to avoid future infringement. 133 F.3d at 1470. The defendant presented samples of the design-around product to the patentee and informed the patentee that it would consider the design-around product non-infringing unless the patentee advised it otherwise. The patentee gave no response to the defendant’s inquiry. Id. Following the defendant’s inquiry, the parties had numerous discussions regarding the patent and even a possible merger. Id. at 1471. The patentee knew of the defendant’s position in the market and the rapidly growing sales of the design-around product. Id. In those years of discussions, the patentee never suggested that it might consider the design-around product to infringe its patent. Id. Years later, the patentee sued the defendant for infringement by the design-around product. Id. at 1471-72. In Scholle, this court found that the discussions that the parties had over the years was “cooperative behavior [that], in light of [the patentee’s] previous threats to sue, created a reasonable inference that [the patentee] considered the [product] a non-infringing design-around product and did not intend to sue.” Id. at 1472. In other words, the “course of dealing” and “extensive . contact” between the parties coupled with the patentee’s inaction created the estoppel. Id. at 1472,1473.
This case does not present this extended course of dealing. Aspex requested information from Clariti and informed it of the patent and basic patent law. In addition, Clariti did not present Aspex with a design-around product and ask whether that product infringed.
In Wafer Shave, the patentee accused Gillette’s “Atra Plus” product of infringing its patent. 857 F.Supp. at 117. In the same communication, the patentee demanded that Gillette “cease and desist from making, using, or selling” the product and threatened to commence litigation within fourteen days of the communication unless Gillette stopped infringing. Id. at 117, 120. Independent evidence also established that Wafer Shave intended to threaten litigation. Id. at 120. Following this communication, Wafer Shave attempted to sell or license the patent to Gillette without reasserting any claim of patent infringement. Based on the specific threat of litigation, the “cease and desist” demand, the deadline to respond before Waver Shave would initiate suit, and the subsequent course of dealing with no mention of infringement, the district court found that Wafer Shave’s conduct was misleading. Id. Aspex’s communications with Clariti did not rise to the level of those in Wafer Shave. Aspex simply informed Clariti that it “may” infringe some of its patents and requested information.
To my eyes, this record also lacks any material prejudice. Prejudice hinges on any changes in economic position that Clariti undertook during the period of delay due to the actions taken or not taken by Aspex. See Ecolab, Inc. v. Envirochem, Inc., 264 F.3d 1358, 1371 (Fed.Cir. 2001). Although “increasing sales ... may constitute economic prejudice,” they alone are not always sufficient to prove that prejudice. See ABB Robotics, Inc. v. GMFanuc Robotics Corp., 52 F.3d 1062, 1065 (Fed.Cir.1995).
Marketing products, which is all Clariti did here, generally does not require the same kind of investment as developing and manufacturing products. For example, in *1319 ABB, the accused infringer expended resources, which a marketing-only company would not, on procuring additional patents in the field of the patent-in-suit and developing the technology. Id. Similarly, in Scholle, the accused infringer invested approximately $700,000 in tooling and machinery, which a marketing-only company would not. 133 F.3d at 1471. In this case, the record leaves many questions about economic prejudice because Clariti did not manufacture any products but simply marketed them.
In addition, the record does not really show that Aspex’s silence contributed at all to the marketing expenses, the increases in sales force, and the trademark protection costs asserted as “prejudice.” The marketing expenses were minimal, $12,500 per year from 2004 to 2006. From 2003 to 2006, Clariti hired sixteen new sales persons, but it is unclear how many sales persons were hired due to increased sales of AirMag® as opposed to Clariti’s over one hundred other products. In addition, the trademark registration shows that the AirMag® mark covers a broad range of eyewear products, including those unrelated to Aspex’s invention. Even the district court stated that there was a “possible factual dispute concern[ing] the extent of Clariti’s economic prejudice.... ” Aspex Eyewear, Inc. v. Clariti Eyewear, Inc., No. 07 Civ. 2373(DC), 2008 WL 5049744, at *7 (S.D.N.Y. Nov. 26, 2008).
Because of these lingering questions of fact, this case was not ripe for summary judgment. Affirming the grant of summary judgment expands the equitable estoppel doctrine beyond this court’s precedent with respect to both misleading conduct and material prejudice.